C. The Common Law Fraud Claim is Dismissed with Prejudice
The Pembertons assert a fraud claim against Nationstar based on Nationstar's alleged failure to report deferred interest payments. They allege that "Nationstar knowingly and intentionally misrepresented the correct amount of interest that plaintiffs paid to it in 2013" on their Form 1098, and "intentionally concealed" its wrongful reporting. (FAC ¶ 73.) The basis of the Pembertons' assertion of falsity is that "Nationstar was under a legal duty pursuant to the 26 U.S.C. § 6050H to report accurately only the interest Nationstar 'received' during each calendar year" and "was further under a duty to correct any mistakes on Forms 1098[.]" (Id. ¶ 74.)
Under California law, "the necessary elements of fraud are: (1) misrepresentations (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter ); (3) intent to defraud (i.e. , to induce reliance); (4) justifiable reliance; and (5) resulting damage." Alliance Mortgage Co. v. Rothwell , 10 Cal.4th 1226, 44 Cal.Rptr.2d 352, 900 P.2d 601, 608 (1995). Rule 9(b) in turn requires-even when a claim is raised under state law-that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud ... shall be stated with particularity." Fed. R. Civ. P. 9(b) ; Kearns v. Ford Motor Co. , 567 F.3d 1120, 1125 (9th Cir. 2009). Allegations supporting a fraud claim thus must move beyond Rule 8(a)(2)'s general requirement that a party plead "a short and plead statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
To avoid dismissal under Rule 9(b), a "complaint [must] state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Edwards v. Marin Park, Inc. , 356 F.3d 1058, 1066 (9th Cir. 2004) (internal quotations omitted). These averments give "defendants notice of the particular misconduct *1044 ... so that they can defend against the charge and not just deny that they have done nothing wrong." Bly-Magee v. California , 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations and citation omitted). Thus, under Rule 9(b), "a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.' " Cafasso v. Gen. Dynamics C4 Sys. , 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz , 616 F.3d 993, 998 (9th Cir. 2010) ). Applying these principles, the Court concludes that the Pembertons cannot plausibly show a false representation, nor can they plausibly plead Nationstar's knowledge of falsity and intent to defraud.
1. The Pembertons Cannot Plausibly Plead that Nationstar Made a False Representation
The Court initially rejects Nationstar's argument that the Pembertons cannot allege a misrepresentation simply because their claim concerns interest information provided on a Form 1098. Nationstar argues that its Form 1098 interest information is merely "an opinion on a question of federal law," suggesting that such information can never be challenged as fraudulent. (ECF No. 55 at 21.) Yet, as Nationstar acknowledges, the information on a Form 1098 "reflects what § 6050H and applicable regulations require to be reported on a Form 1098." (Id. at 23 (emphasis added).) Those requirements do not call for Nationstar's legal opinion on what is and is not reportable mortgage interest, but rather for factual information whose accuracy can be assessed.[11]
Congress has authorized the imposition of statutory penalties for the provision of "incorrect information" regarding home mortgage interest received, whether provided to the IRS or individuals like the Pembertons. Compare 26 U.S.C. § 6721(a)(2)(B) (imposing penalties for "inclusion of incorrect information" in an "information return") with 26 U.S.C. § 6724(d)(1)(B)(v) (defining "information return" to mean "any return required by ... section 6050H(a)", i.e. a return provided to the IRS); compare 26 U.S.C. § 6722(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement") with 26 U.S.C. § 6724(d)(2)(M) (defining "payee statements" to include statements required by " section 6050H(d)", i.e. a statement provided to the individual from whom interest was received). IRS regulations in turn impose penalties for incorrect information in a Form 1098. 26 C.F.R. § 1.6050H-2(e)(2)(iii). Given this scheme, the Court cannot agree with Nationstar that the information it provides in a Form 1098 is a "legal representation" or "opinion" immune from charges of fraud.
Although the Court acknowledges that interest information in a Form 1098 can provide a basis for an actionable misrepresentation, the Pembertons' allegations fail to plausibly establish that Nationstar made representations that were false when made and cannot do so. See Cafasso , 637 F.3d at 1055 ("[C]laims of fraud ... must, in addition to pleading with particularity, also *1045 plead plausible allegations."); Muse Brands, LLC v. Gentil , No. 15-cv-01744-JSC, 2015 WL 4572975, *4 (N.D. Cal. July 29, 2015) ("[T]o qualify as a misrepresentation, the complaint must allege facts sufficient to plausibly establish that the statement was false when made.") (citing In re GlenFed, Inc. Sec. Litig. , 42 F.3d 1541, 1548 (9th Cir. 1994) ).
The crux of the Pembertons' allegation of falsity is that (1) Section 6050H's use of the term "interest" includes "deferred interest" and (2) the amount of interest stated in their 2013 Form 1098 was false because it did not account for deferred interest. (FAC ¶ 73; see also ECF No. 54 at 33.) The Pembertons defend this assertion by pointing the Court to the same cases they rely on to argue that the term "interest" in Section 6050H includes deferred interest as a matter of statutory construction. (Compare ECF No. 54 at 3-6 with id. at 33-34.) In particular, they point to Old Colony Railroad Company for the proposition that interest is the price charged for the use of money and assume that their deferred interest satisfies that meaning. (Id. at 33.)
Fatal to the Pembertons' statutory construction-based assertion of falsity is Section 6050H's ambiguity and the lack of regulatory guidance at the time Nationstar issued its Form 1098. While the Pembertons "would characterize the question as a simple undertaking of statutory construction, that is quite frankly not the case." Strugala , 2015 WL 5186493, at *4. "It cannot be said based on a plain reading of § 6050H whether or not the statute's use of the term 'interest' encompasses capitalized interest." Id. As multiple courts have expressly acknowledged, "[n]either § 6050H nor its implementing regulations provide explicit direction to recipients on how, whether and when to report capitalized interest." Id. at *3 ; see also Rovai v. Select Portfolio Servicing, Inc. , No. 14-cv-1738-BAS-WVG, 2015 WL 3613748, at *3 (S.D. Cal. May 11, 2015) (observing that whether Section 6050H reaches deferred interest and thus requires reporting of deferred interest on a Form 1098 is an "issue of first impression").
The Pembertons implicitly recognize that Section 6050H cannot do the work of showing falsity because they do not rely on Section 6050H itself, or cases or revenue rulings interpreting Section 6050H. They instead direct the Court to several cases interpreting the term "interest" in other provisions of the Internal Revenue Code and on revenue rulings that do not facially address deferred mortgage interest. (ECF No. 54 at 2-7.) The Court cannot conclude that these cases and revenue rulings provide a plausible basis for showing that Nationstar's Form 1098 interest reporting was false when made.
Instructive for the Court is Brakke v. Economic Concepts, Inc. , 213 Cal.App.4th 761, 153 Cal.Rptr.3d 1 (2013), a case involving alleged misrepresentations of federal tax information. The Brakke plaintiffs sued a defendant corporation which marketed and administered pension plans, and which had made representations to the plaintiff in 2002 that its pension plans were legal, complied with the Internal Revenue Code, and would be tax deductible. Id. at 3. The plaintiffs alleged these representations were false because a 2004 IRS audit concluded that the plaintiffs' plan did not comply with relevant Internal Revenue Code provisions and disallowed tax deductions. Id. at 4. Relying on Berry v. Indianapolis Life Insurance Company , 638 F.Supp.2d 732 (N.D. Tex. 2009), the Brakke court held that the plaintiffs failed to allege that statements by the defendants' agents were false when made and, to the extent they were, the plaintiffs could not have reasonably relied on representations *1046 regarding the IRS's future treatment of their pension plan. Id. at 7. Berry in turn involved plaintiffs who asserted claims against four insurance companies and their consultants related to their alleged design of "defined benefit plans" to qualify for federal tax benefits. Berry , 638 F.Supp.2d at 734. The Berry plaintiffs asserted fraud based on similar conduct, alleging that defendants' 2001 and 2002 representations were false based on 2004 and 2005 IRS pronouncements. The Berry court determined that "as a matter of law, regulations and rulings by the IRS in 2004 and 2005 cannot be used to show that statements ... purportedly made in 2001 and 2002 were false when made ..." Berry , 638 F.Supp.2d at 739.
Unlike in the Brakke and Berry cases, the IRS has not made any pronouncement regarding what Section 6050H requires with respect to reporting of deferred interest. Nor has any federal court adopted the statutory construction the Pembertons advance here based on non- Section 6050H cases and different revenue rulings. Even if this Court did so now, Brakke and Berry counsel that it could not be used to show that Nationstar's reporting in 2013 was false when made because the law did not unambiguously set forth clear requirements for reporting deferred interest payments. See Berry , 638 F.Supp.2d at 739 ; Brakke , 153 Cal.Rptr.3d at 7. Stripping away the FAC's assertions of a false representation based on the failure to report deferred interest, there are no other allegations that can sustain the Pembertons' fraud claim. With no factual allegations showing plausible false representations in the 2013 Form 1098 Nationstar provided and the fact that the Pembertons cannot plausibly allege any with respect to Section 6050H, the Court dismisses with prejudice their fraud claim.
2. The Pembertons Cannot Plausibly Plead Knowledge of Falsity and Intent to Defraud
Under the allegations specific to their fraud claim, the Pembertons allege that "Nationstar knowingly and intentionally misrepresented the correct amount of interest that plaintiffs paid to it in 2013." (FAC ¶ 73.) The Court finds that the Pembertons' fraud claim fails because the Pembertons cannot plausibly allege that Nationstar knowingly and intentionally defrauded them.
For the purposes of Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally" by a plaintiff. Fed. R. Civ. P. 9(b) ; see also Odom v. Microsoft Corp. , 486 F.3d 541, 554 (9th Cir. 2007). Although this general averment of intent and knowledge may be sufficient for Rule 9(b), " Twombly and Iqbal 's pleading standards must still be applied to test complaints that contain claims of fraud." Eclectic Props. East, LLC v. Marcus & Millichap Co. , 751 F.3d 990, 995 n.5 (9th Cir. 2014). This means that "[p]laintiffs must still plead facts establishing scienter with the plausibility standard required under Rule 8(a)." DeLeon v. Wells Fargo Bank, N.A. , No. 10-CV-01390-LHK, 2011 WL 311376, at *8 (N.D. Cal. Jan. 28, 2011) (citing Iqbal , 556 U.S. at 686, 129 S.Ct. 1937 ) (conclusory allegations regarding knowledge of falsity fails to plausibly show scienter or knowledge of falsity necessary for fraud claim); Gilliland v. Chase Home Fin., LLC , No. 2:13-cv-02042 JAM-AC, 2014 WL 325318, at *6 (E.D. Cal. Jan. 29, 2014) (same); see also Tabletop Media, LLC v. Citizen Systems of Am. Corp. , No. CV16-7140 PSG, 2017 WL 3081690, at *4 C.D. Cal. June 16, 2017 (same). The Pembertons cannot plausibly satisfy this standard. The Pembertons allege that Nationstar's "method of calculating mortgage *1047 interest ... assumes that the entire loan balance constitutes principal and fails to recognize that interest that was previously deferred does not lose its character as interest[.]" (FAC ¶ 12 (emphasis added).) Nationstar's alleged "assumption," however, is consistent with the terms of Pembertons' Note. Although the IRS may very well adopt the Pembertons' position on Section 6050H reporting at a later point and even if this Court considers the Pembertons' position to be reasonable, this cannot show Nationstar's knowledge of falsity at the time it issued the 2013 Form 1098.
The Pembertons' allegations regarding Nationstar's intent to defraud fare no better. "Intent to defraud is defined as the intent to induce reliance on a knowing misrepresentation or omission." Moss v. Kroner , 197 Cal.App.4th 860, 129 Cal.Rptr.3d 220, 226 (2011). "[M]ere conclusory allegations" that representations or omissions "were intentional and for the purpose of defrauding and deceiving plaintiffs ... are insufficient." Linear Tech. Corp. v. Applied Materials, Inc. , 152 Cal.App.4th 115, 61 Cal.Rptr.3d 221, 234 (2007) ; see also see also Sukonik v. Wright Med. Tech., Inc. , No. CV 14-08278 BRO (MRWx), 2015 WL 10682986, at *15 (C.D. Cal. Jan. 26, 2015) ("[A]llegations of intent must still meet Rule 8(a)'s plausibility standard under Twombly and Iqbal ."). The Pembertons allege that Nationstar "knowingly started to purchase Option Arm Mortgages that had a separately reportable income component to the seller (i.e. unpaid deferred interest) ... with the intent to convert it into an asset note" so that there was "no separately reportable income component." (FAC ¶ 18.) In the Pembertons' view, "[t]hrough its purchase Nationstar effectively transformed interest to principal without notice to borrowers[.]" (Id. ¶ 18.) However, whatever Nationstar's alleged motive was for purchasing a portfolio of Option ARM loans, the Pembertons' allegations do not plausibly show an intent to defraud with respect to Nationstar's Section 6050H reporting. The Pembertons' Note, which Nationstar did not create, treats deferred interest as principal and did so before Nationstar ever began to service the Pembertons' loan. As the Court has discussed, the Pembertons' Note also gave them clear and repeated notice that deferred interest would be treated as principal under the contract. Given these facts, the Pembertons cannot plausibly allege that Nationstar intended to defraud them. Accordingly, the Court dismisses the Pembertons' fraud claim with prejudice.
D. The UCL Claim is Subject to Partial Dismissal
The Pembertons assert a claim against Nationstar under California's Unfair Competition Law ("UCL"), which prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability" and "an independent basis for relief." Lozano v. AT&T Wireless Servs., Inc. , 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted); see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co. , 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 539 (1999). The Pembertons argue that they have stated a UCL claim under any of its prongs. (ECF No. 54 at 25-28.) Nationstar disputes this and further argues that even if a UCL claim is plausible, the Court should abstain from resolving it. (ECF No. 55 at 29-32.) The Court concludes that while the Pembertons have failed to state a claim under the fraudulent and unlawful prongs and cannot plausibly do so, the Pembertons have stated a claim under the unfair prong that does not warrant UCL abstention.
*1048 1. The Fraudulent Prong Claim Is Dismissed
"A business practice is fraudulent under the UCL if members of the public are likely to be deceived." Davis v. HSBC Bank Nevada, N.A. , 691 F.3d 1152, 1169 (9th Cir. 2012) (citation omitted). The fraudulent prong thus requires a plaintiff to "show deception to some members of the public, or harm to the public interest," or to allege that "members of the public are likely to be deceived," by the defendants' conduct. Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc. , 178 F.Supp.2d 1099, 1121 (C.D. Cal. 2001) ; Schnall v. Hertz Corp. , 78 Cal.App.4th 1144, 93 Cal.Rptr.2d 439 (2000). A fraudulent prong claim must also satisfy Rule 9(b)'s heightened pleading standard by stating with particularity the circumstances constituting the allegedly fraudulent practice, including the who, what, when, where, and how of the misconduct charged. Ebeid ex rel. United States , 616 F.3d at 998 ; Kearns , 567 F.3d at 1125.
The Pembertons defend their fraudulent prong claim by asserting that "Nationstar made misrepresentations to the public" without expressly spelling out what those misrepresentations were. (ECF No. 54 at 28.) The Court does not doubt that the misrepresentations to which the Pembertons refer is that the interest amount Nationstar reports in Forms 1098 does not include deferred interest payments. The Court has already rejected as implausible the Pembertons' allegations that such interest amounts were misrepresentations when made in its analysis of the Pembertons' common law fraud claim. Although a fraudulent prong claim "is distinct from common law fraud and does not require a plaintiff to plead and prove the elements of a tort," "courts have been unwilling to impose liability under the fraudulent prong of the UCL" when "a defendant lacked knowledge of the facts that rendered its representations misleading at the time it made the representations." Kowalsky v. Hewlett-Packard Co. , 771 F.Supp.2d 1156, 1159-60, 1161 (N.D. Cal. 2011) ; see also Neu v. Terminix Int'l, Inc. , No. C 07-6472 CW, 2008 WL 2951390, at *3-4 (N.D. Cal. July 24, 2008) (finding UCL fraudulent prong claim implausible when studies relied on by plaintiff to show falsity of representations were published after the defendant's statements at issue in case). For the reasons set forth in the Court's analysis of the Pembertons' fraud claim, the Court concludes that the Pembertons cannot plausibly allege that Nationstar made a false representation to them when it issued their 2013 Form 1098 and dismisses with prejudice the Pembertons' UCL fraudulent prong claim.
2. The Unlawful Prong Claim is Dismissed
The FAC alleges that Nationstar violated the terms of Section 6050H by failing to include on its Forms 1098 mortgage interest payments the Pembertons made. (FAC ¶ 60.) The Pembertons in turn argue that they have stated a UCL claim under the unlawful prong because Nationstar violated Section 6050H by not reporting deferred interest payments, as shown by the Pembertons' construction of Section 6050H. (ECF No. 54 at 25.) Nationstar contends that that "nothing in [S]ection 6050H addresses whether deferred interest must be included in the amounts reported" in a Form 1098. (ECF No. 55 at 8, 29.) Nationstar therefore argues that the Pembertons have failed to satisfy the "unlawful" aspect of an unlawful prong claim because it did not violate Section 6050H. (Id. at 29.)
*1049 Violations of other laws are treated as "unlawful" business practices that are independently actionable under the UCL.[12] Chabner v. United of Omaha Life Ins. Co. , 225 F.3d 1042, 1048 (9th Cir. 2000) ; see also Cel-Tech Commc'ns, Inc. , 83 Cal.Rptr.2d 548, 973 P.2d at 539-40 (same). A practice may be actionable under the unlawful prong if it violates any law "civil or criminal, statutory or judicially made, federal, state or local." McKell v. Wash. Mut., Inc. , 142 Cal.App.4th 1457, 49 Cal.Rptr.3d 227, 242 (2006). "[A] UCL claim under the unlawful prong is dependent on an underlying offense." Robinson v. Hunger Free Am., Inc. , No. 1:18-cv-00042-LJO-BAM, 2018 WL 2563809, at *4 (E.D. Cal. June 4, 2018). An unlawful prong claim is not plausible when it is premised on conduct that does not violate the borrowed law. See Webb v. Smart Documents Solutions, LLC , 499 F.3d 1078, 1082 (9th Cir. 2007) (noting that defendant's conduct "must violate a law ... in order for [p]laintiffs to state a claim for relief under Section 17200's 'unlawful' prong"); Garon v. eBay, Inc. , No. C 10-05737 JW, 2011 WL 6329089, at *6 (N.D. Cal. Nov. 30, 2011) ("[W]here the conduct alleged by a plaintiff does not violate any law, the plaintiff has not stated a claim for relief under the unlawful prong of the UCL."); Ingels v. Westwood One Broad. Servs., Inc. , 129 Cal.App.4th 1050, 28 Cal.Rptr.3d 933 (2005) ("[a] defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law").
The basis of the Pembertons' unlawful prong claim is that Section 6050H requires Nationstar to report deferred interest payments, which Nationstar failed to satisfy when it issued the Pembertons' 2013 Form 1098. (FAC ¶ 60.) As discussed, a plain reading of Section 6050H does not address whether, when, or how to report deferred interest payments, nor do Section 6050H's implementing regulations provide guidance on these issues. See Strugala , 2015 WL 5186493, at *4 ; Rovai , 2015 WL 3613748, at *3. The Court is not persuaded that the Pembertons have alleged factual allegations which plausibly satisfy the unlawful prong's requirement that the defendant's conduct "must violate" a borrowed statute or "be forbidden by law." See Webb , 499 F.3d at 1082 ; McVicar v. Goodman Global, Inc. , 1 F.Supp.3d 1044, 1053 (C.D. Cal. 2014). If the Pembertons had contended that Nationstar failed to report interest that it is undoubtedly required to report, such as accrued monthly interest the Pembertons paid, the Court would sustain this claim. But this has never been the Pembertons' assertion. Nor do the Pembertons point this Court to any other law to sustain their unlawful prong claim. (See ECF No. 54 at 25-27) (solely discussing alleged violation of Section 6050H.) Accordingly, the Court dismisses the Pembertons' UCL unlawful prong claim.
*1050 3. The Unfair Prong Claim is Plausible
The UCL does not define the term "unfair" and the proper definition of what qualifies as "unfair" conduct against consumers is currently in flux among California courts. Davis v. HSBC Bank , 691 F.3d 1152, 1169 (9th Cir. 2012) (citation omitted). Despite this flux, California courts have used two tests for consumer claims of unfair conduct: the "public policy" test and the "balancing test."[13] Id. Federal courts apply both tests to assess the sufficiency of an unfair prong claim. See Lozano v. AT&T Wireless Servs., Inc. , 504 F.3d 718, 736 (9th Cir. 2007). The Court finds that the FAC plausibly alleges an unfair prong claim under both tests.
a. The Public Policy Test and Section 163
Under the public policy test, a plaintiff must show that the defendant's alleged practice violates some public policy. See Fraley v. Facebook, Inc. , 830 F.Supp.2d 785, 813 (N.D. Cal 2011). This test requires that the claim "be tethered to some specific constitutional, statutory, or regulatory provisions." McVicar , 1 F.Supp.3d at 1054 (citing Scripps Clinic v. Superior Court , 108 Cal.App.4th 917, 134 Cal.Rptr.2d 101 (2003) and Gregory v. Albertson's, Inc. , 104 Cal.App.4th 845, 128 Cal.Rptr.2d 389 (2002) (internal quotation marks omitted) ). By doing so, some courts have suggested that the public policy test potentially "collaps[es] the 'unfair' 'prong' into the 'unlawful' prong." McVicar , 1 F.Supp.3d at 1054. This Court sees no such issue because a business practice may be "unfair ... in violation of the UCL even if the practice does not violate any law. "[14] Olszewski v. Scripps Health , 30 Cal.4th 798, 135 Cal.Rptr.2d 1, 69 P.3d 927 (2003) (emphasis added); see also Korea Supply Co. v. Lockheed Martin Corp. , 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003) ("[U]nder section 17200, a practice may be deemed unfair even if not specifically proscribed by some other law." (internal quotations and citation omitted) ). This means that a plaintiff may be able to plausibly plead that a practice which does not facially violate a law nevertheless "offends an established public policy." Smith v. State Farm Mut. Automobile Ins. Co. , 93 Cal.App.4th 700, 113 Cal.Rptr.2d 399, 415 (2001) ; see also In re Adobe Sys. Privacy Litig. , 66 F.Supp.3d 1197, 1227 (N.D. Cal. 2014) ("Plaintiffs do not need to plead any direct violations of a statute to bring a *1051 claim under the UCL's unfair prong. Instead, Plaintiffs need merely to show that the effects of [a defendant's] conduct 'are comparable to or the same as a violation of the law, or otherwise significantly threaten[ ] or harm[ ] competition.' " (quoting Cel-Tech , 83 Cal.Rptr.2d 548, 973 P.2d at 544 ) ).
The Pembertons' allegations are sufficient to state an unfair prong claim under the public policy test. The Pembertons allege that as a result of Nationstar's conduct, "Plaintiffs have not been able to correctly state their taxes or obtain the full mortgage interest deduction they are entitled to under 26 U.S.C. [§] 163." (FAC ¶ 21.) Section 163 permits taxpayers to deduct home mortgage interest payments. 26 U.S.C. §§ 163(a), (h). It undeniably represents an established public policy, which Section 6050H reporting facilitates.[15] The Pembertons also allege that Nationstar's failure and refusal to account for deferred interest has directly harmed them by causing them to take smaller tax deductions. (Id. ¶¶ 12, 16, 21-23.) These allegations are sufficient to show that Nationstar's conduct offends the public policy reflected in Section 163. The Court need not separately analyze whether Section 6050H reflects a public policy, the violation of which would state a claim under the unfair prong.
b. The Balancing Test Shows the Alleged Harm Outweighs Any Justification or Utility Nationstar Advances
Under the balancing test, a business practice is "unfair" "when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." S. Bay Chevrolet v. Gen. Motors Acceptance Corp. , 72 Cal.App.4th 861, 85 Cal.Rptr.2d 301, 316 (1999) ; see also Hodsdon v. Mars, Inc. , 162 F.Supp.3d 1016, 1026 (N.D. Cal. 2016). This test requires courts to "examine the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer," and "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Davis , 691 F.3d at 1169 (quotations and citation omitted); McKell , 49 Cal.Rptr.3d at 240. The balancing test should not be a particularly difficult test to satisfy at the motion to dismiss stage. See Ellsworth v. U.S. Bank, N.A. , 908 F.Supp.2d 1063, 1090 (N.D. Cal. 2012) (finding that plaintiff's allegations "satisf[y] the balancing test given the lenient standard on a motion to dismiss").
The Pembertons allege that Nationstar has failed to report millions of dollars in mortgage interest that it has actually received from consumers with Option ARM loans, caused taxpayers to "unknowingly file erroneous tax returns" and "permanently los[e] valuable tax deductions," and caused the Pembertons to take a smaller tax deduction in 2013 and file an incorrect tax return. (FAC ¶¶ 2, 12, 21-22.) They further allege that the IRS rejects attempts by taxpayers to seek a deduction for an interest amount higher than that reported in a Form 1098. (Id. ¶¶ 13-14.) Taking these allegations as true, they *1052 show that the Pembertons have suffered substantial harm from Nationstar's conduct.
Nationstar, however, contends that its reporting does not pose substantial and unavoidable injury to the Pembertons because the Pembertons "could have avoided injury by attempting to claim a greater deduction than the amount of interest reported on the Forms 1098." (ECF No. 55 at 31.)[16] This argument is one Nationstar has made throughout the litigation, pointing the Court to a statement on Forms 1098 that deductible mortgage interest could be different from what ss reported. (ECF No. 55 at 25 (referring also to Schedule A to Form 1040 and Publication 936 which "all inform the Pembertons that the interest amount reported on Form 1098 may not be the same as the amount a borrower may deduct").) The Pembertons, however, allege that the IRS rejects attempts by a taxpayer to seek an interest deduction different from the amount the loan servicer provides the IRS. Because the Court must accept as true that allegation at this stage, the Court cannot dismiss the unfair prong claim based on Nationstar's argument. See Bias v. Wells Fargo & Co. , 942 F.Supp.2d 915, 933 (N.D. Cal. 2013) (noting that "[w]hether this [UCL] claim ultimately prevails in [defendant's] favor is not currently at issue" and that "[t]aking the allegations as a whole and in the light most favorable to Plaintiffs, they have alleged sufficient facts to state a claim under" various unfair tests).
As for the utility of Nationstar's conduct, the Court presently has no basis to find that Nationstar's failure to report deferred interest payments has any utility, let alone utility that outweighs the gravity of the alleged harm to the Pembertons. See Fraley , 830 F.Supp.2d at 813 (reaching the same conclusion in sustaining UCL unfair prong claim under balancing test). Nationstar has never argued that reporting deferred interest payments would impose any meaningful burden on it. At oral argument, it was suggested that reporting deferred interest may be as simple as establishing a computer program that tracks deferred interest and reporting those numbers to the IRS and individuals like the Pembertons. Accordingly, the Court cannot find a meritorious defense of Nationstar's practice at this stage. See, e.g., Backus v. General Mills , 122 F.Supp.3d 909, 930 (N.D. Cal. 2015) (sustaining unfair prong claim when plaintiff alleged harms "that could be avoided in a cost-effective way" and "because [the defendant] has not submitted a meritorious argument regarding the utility of the practice").
Nationstar does not expressly assert a justification for not reporting deferred interest, but the Court finds two grounds asserted in Nationstar's briefing, neither of which is compelling or outweighs the harm the Pembertons allege. First, while Nationstar points to the contract as permitting it to treat deferred interest as *1053 principal, no party disputes that the contract does not address Nationstar's reporting of deferred interest for tax purposes. (FAC ¶ 43; ECF No. 55 at 16-17 ("The note does not mention Forms 1098. It does not mention the mortgage interest deduction.").) Respecting the distinction between what is interest and principal for contractual purposes as opposed to tax purposes, the Court is not persuaded that the former makes implausible an unfair prong claim premised on the latter. Second, Nationstar contends that nothing in Section 6050H or its implementing regulations requires reporting of deferred interest. However, this contention carries little weight for the Court because Nationstar does not argue that deferred home mortgage interest is not deductible as a general matter or in the Pembertons' case, or that Nationstar is prohibited from reporting deferred interest. Accordingly, the Court finds that the Pembertons have stated an unfair prong claim based on the balancing test.
4. UCL Abstention Is Not Warranted
Nationstar argues that if the Court finds that the Pembertons have stated a UCL claim, the Court should nevertheless abstain from adjudication due to the IRS's administration of the federal tax scheme. (ECF No. 55 at 29.) The Court declines to do so because abstention is not warranted on the unfair prong claim.
Arising from the equitable nature of the injunction and restitution remedies available under the UCL is a court's discretion to abstain from employing these remedies. Alvarado v. Selma Convalescent Hospital , 153 Cal.App.4th 1292, 64 Cal.Rptr.3d 250, 253 (2007). California courts have recognized that abstention from deciding a UCL claim may be proper "in the rare instance." Rex. v. Chase Home Fin. LLC , 905 F.Supp.2d 1111, 1134 (C.D. Cal. 2012). For example, courts may abstain when a lawsuit involves wholesale policy determinations better suited for a legislature or an administrative agency, rather than a judge. See Cal. Grocers Ass'n v. Bank of Am. , 22 Cal.App.4th 205, 27 Cal.Rptr.2d 396, 404 (1994) (finding court abused discretion by granting injunctive relief under UCL because "this case implicates a question of economic policy: whether service fees charged by banks are too high and should regulated."); see also Shamsian v. Dep't of Conservation , 136 Cal.App.4th 621, 39 Cal.Rptr.3d 62, 78 (2006). Judicial abstention may be appropriate if granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce. See Diaz v. Kay-Dix Ranch , 9 Cal.App.3d 588, 88 Cal.Rptr. 443, 451 (1970) (affirming judgment that declined to impose injunctive relief that "would subject farm operators to burdensome, if bearable, regulation, and the courts to burdensome, if bearable, enforcement responsibilities"). Beyond these limited circumstances, "it is an abuse of discretion to use the equitable abstention doctrine to deny relief where plaintiffs' claims require the court 'to perform the basic judicial functions of contractual and statutory interpretation,' even where a government agency offers an 'administrative process by which' plaintiffs can seek relief." Rex , 905 F.Supp.2d at 1134-35 (quoting Shamsian , 39 Cal.Rptr.3d at 78 ).
Any persuasive force that Nationstar's abstention argument may have had is blunted by the Court's dismissal of the Pembertons' fraudulent and unlawful prong claims-the only claims which could possibly raise the specter of policymaking by calling for a definitive interpretation of Section 6050H's treatment of deferred interest and applying that to the Pembertons' circumstances in the absence of IRS guidance. Because the Pembertons cannot plead plausible claims under the fraudulent or unlawful prongs, the Court is not "assum[ing *1054 ] the functions of an administrative agency." Alvarado , 64 Cal.Rptr.3d at 253 ; cf. Walsh v. Kindred Healthcare , 798 F.Supp.2d 1073, 1085 (N.D. Cal. 2011) (finding abstention appropriate to the extent UCL claim was premised on state statute requiring the state agency to adopt regulations setting forth minimum nursing hours at skilled nursing facilities).
As for the Pembertons' unfair prong claim, the specter of making legislative policy determinations is not presented based on the application of the unfair prong tests to the conduct the Pembertons allege. To the extent the Pembertons' claim is premised on Section 163, that provision itself reflects a legislative policy, the soundness of which this Court does not second-guess. To the extent the Pembertons' claim is premised on balancing the harms alleged versus the justifications for and utility of Nationstar's reporting practice, Nationstar has not shown "the analyses required to adjudicate Plaintiff[s]' UCL claim ... to be overly complex[.]" Wehlage v. EmPres Healthcare, Inc. , 791 F.Supp.2d 774, 786 (N.D. Cal. 2011).
Nationstar has also failed to show how injunctive relief might burden the Court, or require the imposition of burdensome regulation. See McMillan v. Lowe's Home Ctrs., LLC , No. 1:15-cv-00695 DAD SMS, 2016 WL 2346941, at *5 (E.D. Cal. May 4, 2016) (case involved injunctive relief against only two parties, as opposed to the "issu[ance of] a network of injunctions across the state or to engage in a long-term monitoring process"). The relief the Pembertons request is simply an order that Nationstar report deferred interest payments and provide corrected forms for prior years. (FAC ¶ 71.) While the Court lacks the power to order Nationstar to specifically report deferred interest payments in Forms 1098, as the Court discusses herein, Nationstar has failed to show that any other injunctive relief this Court could order will upset any administrative scheme.[17] See, e.g., Matoff v. Brinker Rest. Corp. , 439 F.Supp.2d 1035, 1038 (C.D. Cal. 2006). Because the Court is not persuaded that this is the "rare case" in which UCL abstention is appropriate, the Court declines to abstain.
E. The Negligence Claim is Plausibly Pleaded
The Pembertons allege a negligence claim against Nationstar in the alternative to their fraud claim. (FAC ¶ 83 ("Assuming that Nationstar did not intentionally report incorrect amounts of mortgage interest on the Forms 1098 that it sent to plaintiffs[.]").) They allege that "Nationstar had a legal duty [under Section 6050H ] to report accurately only the interest Nationstar 'received' during each calendar year" and a further "duty to correct any mistakes on an incorrect Form 1098 as soon as possible after determining that a wrong amount had been reported." (Id. ¶ 82.) Nationstar allegedly breached its legal duties to the Pembertons by its respective failures to accurately report their interest payments in their 2013 Form 1098 and to correct the information reported after the *1055 Pembertons complained. (Id. ¶¶ 11, 15-16, 22, 83.) The Pembertons allege that they have been damaged by Nationstar's negligence because of the IRS's policy of rejecting a return claiming an amount of interest that does not match the amount stated on a servicer-issued Form 1098. (Id. ¶ 84.)
To state a negligence claim under California law, a plaintiff must allege: (1) a legal duty of care owed by the defendant to her, (2) a breach of that duty, and (3) proximate causation of that breach to (4) the plaintiff's injury. Merrill v. Navegar, Inc. , 26 Cal.4th 465, 110 Cal.Rptr.2d 370, 28 P.3d 116, 123 (2001) ; see also Steinle v. City & Cty. of San Francisco , 230 F.Supp.3d 994, 1019 (N.D. Cal. 2017). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against an unintentional invasion." Paz v. State of California , 22 Cal.4th 550, 93 Cal.Rptr.2d 703, 994 P.2d 975, 981 (2000). The existence of a duty is a question of law to be resolved by a court on a case-by-case basis. Id. ; Alvarez v. BAC Home Loans Servicing, L.P. , 228 Cal.App.4th 941, 176 Cal.Rptr.3d 304, 306 (2014) ; see also Flores v. EMC Mortg. Co. , 997 F.Supp.2d 1088, 1113 (E.D. Cal. 2014) ("The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide."). Both parties dispute extensively whether Nationstar owed any duty to the Pembertons-there is no dispute about whether the Pembertons have adequately alleged a breach or resulting harm if a duty exists. Accordingly, the Court focuses solely on whether a duty of care exists in this case.
In California, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."[18] Paz , 93 Cal.Rptr.2d 703, 994 P.2d at 981. This rule applies to loan servicers as well.[19]
*1056 Azzini v. Countrywide Home Loans , No. 09-cv-787-DMS-CAB, 2009 WL 5218042, at *2 (S.D. Cal. Dec. 29, 2009) ; Wong v. Am. Servicing Co., Inc. , No. 2:09-CV-01506 FCD/DAD, 2009 WL 5113516, at *6 (E.D. Cal. Dec. 18, 2009). "Lenders and loan servicers in California do not ordinarily owe borrowers or third parties any duties beyond those expressed in the loan agreement." York v. Bank of Am. , No. 14-cv-02471-RS, 2015 WL 3561723, at *10 (citing Castaneda v. Saxon Mortg. Servs. , 687 F.Supp.2d 1191, 1198 (E.D. Cal. 2009) ). However, "[w]hen considered in full context, the cases show the question is not subject to black-and-white analysis, and not easily decided on the 'general rule.' " Jolley v. Chase Home Finance, LLC , 213 Cal.App.4th 872, 153 Cal.Rptr.3d 546, 567 (2013).
California courts apply a non-exhaustive six-factor test to determine "whether a financial institution owes a duty of care to a borrower-client" even when the financial institution has not exceeded its role as a mere lender. See Nymark v. Heart Fed. Savings & Loan Ass'n , 231 Cal.App.3d 1089, 283 Cal.Rptr. 53, 58 (1991). A court "balanc[es] various factors, including: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." Id. (applying six-factor test set forth in Biakanja v. Irving , 49 Cal.2d 647, 320 P.2d 16 (1958), to determine whether financial institution owed a duty of care to borrower).[20] Federal courts routinely apply the Biakanja factors to determine whether a loan servicer owes a duty to a particular borrower plaintiff under the facts alleged. See , e.g., Clinton v. Select Portfolio Servicing, Inc. , 225 F.Supp.3d 1168, 1173-74 (E.D. Cal. 2016) ; Gilmore v. Wells Fargo Bank, N.A. , 75 F.Supp.3d 1255, 1266 (N.D. Cal. 2014) ; Rockridge Trust v. Wells Fargo Bank, N.A. , 985 F.Supp.2d 1110, 1160-61 (N.D. Cal. 2013).
To assess whether a duty exists, a court must first "identify[ ] the specific conduct by [the defendant] which [the plaintiff] claims was negligent so to limit our analysis 'the specific action the plaintiff claims the particular [defendant] had a duty to undertake in the particular case.' " Jolley , 153 Cal.Rptr.3d at 568 (quoting Vasquez v. Residential Investments, Inc. , 118 Cal.App.4th 269, 12 Cal.Rptr.3d 846 (2004) ). The allegations show that Nationstar allegedly failed (1) to accurately report the interest it received from the Pembertons during the calendar year in accordance with Section 6050H and, relatedly, (2) to correct any mistakes on the Form 1098 it provided "as soon as possible after determining that a wrong amount *1057 had been reported." (FAC ¶¶ 82-83.) The Court addresses both issues.
1. Alleged Duty of Care In Reporting
The Pembertons argue that a duty exists because Section 6050H requires an interest recipient to report interest payment information to the interest payor, as opposed to just the IRS. (ECF No. 54 at 22.) They further argue that the Biakanja factors support a duty because: (1) the transaction, i.e. , provision of a Form 1098 and calculation of the amounts reported therein, was intended to affect them, (2) they have no input whatsoever in how Nationstar reports interest in a Form 1098, (3) borrowers, tax preparers and the IRS all rely on the Forms 1098, (4) there is a "dollar for dollar" connection between the amount of misreported interest and their injury, (5) Nationstar has moral blame as a "sophisticated financial institution whose very business it is to correctly service loans," and (6) the policy of preventing future harm favors them because Nationstar can prevent the harm to the Pembertons by simply changing its reporting policy. (Id. at 24-25.) For its part, Nationstar argues that "[a] lender owes its borrower no duty with respect to the borrower's tax obligations" and, in this instance, an information return issuer "owes a duty only to the IRS, not the taxpayer." (ECF No. 55 at 26.) Nationstar makes no other argument regarding the Biakanja factors, but instead asserts that the lack of a federal right of action under Section 6050H forecloses the Pembertons' negligence claim. (Id. at 27.)
After completion of the parties' briefing in this case, one district court dismissed with prejudice a negligence claim concerning Section 6050H reporting. Applying the Biakanja factors, the court determined that the defendant bank's issuance of a Form 1098 is "for its own benefit, to fulfill its own statutory obligations." Neely v. JP Morgan Chase Bank , N.A. , No. 16-cv-01924, ECF No. 72 at 7 (C.D. Cal. April 10, 2018). The court then determined that the foreseeability of harm was "remote" because a taxpayer has an "independent duty to keep records of his interest payments" under IRS Revenue Ruling 70-647, which attenuated the relationship between the plaintiff's injury and the alleged misreporting. Id. (citing IRS Rev. Rul. 70-647, 1970-2 C.B. 38, 1970 WL 21200, at *2 (1970).) The court further reasoned that "placing the burden of accurate reporting on Chase would negate Neely's independent duty." Id. This Court respectfully departs from this reasoning.
Neither party disputes that Section 6050H imposes a statutory obligation on Nationstar, as an interest recipient, to report interest payments it receives. That obligation does not make Nationstar responsible for the Pembertons' tax obligations, but it plainly requires Nationstar to provide "correct information" in its reporting, even accepting that the Pembertons have their own independent duties in respect of their tax obligations.[21] While *1058 Nationstar emphasizes the subsection in Section 6050H which obligates it to report interest payments to the IRS, a different subsection obligates Nationstar to report interest payments to payers, like the Pembertons. Contrast 26 U.S.C. § 6050H(a)with id. § 6050H(d). That obligation is related to, but not the same as Nationstar's obligation to the IRS-and they are independently subject to statutory penalties for the provision of "incorrect information." 26 U.S.C. § 6722(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement"); 26 U.S.C. § 6724(d)(2)(M) (defining "payee statement" to include statements required by " section 6050H(d)"); 26 U.S.C. § 6721(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement"); 26 U.S.C. § 6724(d)(1)(B)(v).
More fundamentally, Nationstar's statutory obligation to the Pembertons does not foreclose a duty of care in how it discharges that obligation, but rather may properly serve as the basis for a duty.[22] See J'Aire Corp. v. Gregory , 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60, 62 (1979) ("A duty of care may arise through statute ..."); Greystone Homes, Inc. v. Midtec, Inc. , 168 Cal.App.4th 1194, 86 Cal.Rptr.3d 196, 212 (2008) ("[a] duty of care may arise through statute ..."). Indeed "a statute may impose a duty where none existed at common law." Sierra-Bay Federal Land Bank Ass'n v. Superior Court , 227 Cal.App.3d 318, 277 Cal.Rptr. 753, 761 (1991) [hereinafter " Sierra-Bay "]. Several courts have determined that a duty of care arises from federal statutory obligations to provide or disclose information-even in the context of home mortgage lenders and servicers. See Watson v. Bank of Am., N.A. , No. 16-cv-513-GPC-MDD, 2016 WL 3552061, at *14 (S.D. Cal. June 30, 2016) (concluding that "[p]laintiffs have sufficiently alleged that [defendant], as a loan servicer, had a duty to exercise reasonable care in proceeding and reviewing and responding to [Requests for Information] and [Notice of Error]" required under RESPA); Boessenecker v. JPMorgan Chase Bank , No. 13-0491-C-MMC, 2014 WL 107063, at *1-2 (N.D. Cal. Jan. 10, 2014) (permitting negligence claim based on defendant's alleged failure to respond *1059 to two Qualified Written Requests ("QWRs") mandated by RESPA); Osei v. Countrywide Home Loans , 692 F.Supp.2d 1240, 1250 (S.D. Cal. 2010) (plaintiff alleged a plausible failure by the defendant to make required disclosures under RESPA and determining that "[defendant] had a duty of care with regard to RESPA disclosures"); Baldain v. Am. Home Mortg. Servicing, Inc. , No. CIV. S-09-0931-LKK-GGH, 2010 WL 56143, at *6 (E.D. Cal. Jan. 5, 2010) (a defendant's failure to make disclosures required by Truth in Lending Act "support finding a duty of care as to these disclosures"); Champlaie v. BAC Home Loans Servicing, LP , 706 F.Supp.2d 1029, 1061 (E.D. Cal. 2009) (concluding that duty of care existed based on lender's failure to make disclosures as required by the Truth in Lending Act). This Court sees no fundamental difference between these cases and that of the Pembertons because Section 6050H requires an interest recipient to report interest payments to the Pembertons.
The Pembertons' allegations otherwise support a duty of care under the Biakanja factors. Consistent with the Court's determination that the Pembertons have standing to pursue their claims, the allegations show that their injury was foreseeable and sufficiently closely connected to Nationstar's alleged failure to account for deferred interest. See Pemberton v. Nationstar Mortgage LLC , No. 14-cv-1024-BAS-WVG, 2017 WL 4759018, at *5-6 (S.D. Cal. Oct. 20, 2017). The Court does not find that Nationstar's conduct is particularly morally blameworthy insofar as it concerns Nationstar's initial provision of Forms 1098. However, the allegations show that the injury the Pembertons allege-which assumes that the IRS rejects attempts by taxpayers to claim a higher deduction than the amount reported on a Form 1098-could easily be prevented by Nationstar merely reporting deferred interest. Accordingly, the Pembertons' allegations are sufficient to show a duty of care at the pleading stage.
As a final issue on the duty alleged to arise from Section 6050H, Nationstar relies on Sierra-Bay to argue that California law does not permit the Pembertons to sue in negligence because Section 6050H lacks a private cause of action. (ECF No. 55 at 27.) A close review of Sierra-Bay shows it has limited application to the Pembertons' claim. The Sierra-Bay defendants had exercised their power of sale in certain deeds of trust after the plaintiff borrower failed to repay loans he obtained through the federal Farm Credit System. Sierra-Bay , 277 Cal.Rptr. at 754. The plaintiff attempted to raise a claim under the Farm Credit Act of 1971 and several negligence claims. The plaintiff invoked Section 669 of the California Evidence Code to state a negligence claim, a provision which treats the violation of a statute as negligence per se.[23] As Sierra-Bay made clear, however, the presumption of Section 669 does not come into play in the absence of a duty of care , something which the plaintiff in that case failed to allege. Id. at 762. The court determined that the facts showed nothing more than a traditional borrower-lender relationship in which the latter is not liable for the borrower's success or failures. The Pembertons' negligence claim does not refer to Section 669 and even if it did, the Court *1060 has determined that the pleadings otherwise establish a duty of care.
Sierra-Bay further determined, even if a duty of care could be implied, a negligence claim in that case would stand as an obstacle to the federal statutory scheme. Id. at 763 ("Since we may not recognize a state cause of action if to do so would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, it follows that we may not recognize a private cause of action for damages here."). This reasoning clearly sounds in preemption. See Wash. Mut. Bank v. Superior Court , 75 Cal.App.4th 773, 89 Cal.Rptr.2d 560, 571 n.16 (1999) (noting that Sierra-Bay relied on an earlier "implied preemption case" and concluding that "[w]e also read Sierra-Bay as an implied preemption case."). The Court has noted that Nationstar concedes it does not raise a preemption argument at this stage and the Court declines to undertake such an analysis now. Thus, Sierra-Bay does not foreclose the Pembertons' negligence claim.
2. Alleged Duty to Correct Reporting Mistakes
The Pembertons also allege that Nationstar had "a duty to correct any mistakes on Forms 1098 as soon as possible after determining that a wrong amount had been reported." (FAC ¶ 82.) This duty is related to the duty of care concerning Nationstar's initial Section 6050H reporting, but it separately arises from how Nationstar allegedly investigated and responded to the Pembertons' complaint. Nationstar makes no argument that a duty of care cannot arise from this conduct. (ECF No. 55 at 25-29 (not addressing the issue).)
The Pembertons allege they brought to Nationstar's attention its alleged failure to report deferred interest payments in their 2013 Form 1098 and requested a revised Form 1098. (FAC ¶ 15.) Nationstar acknowledged the Pembertons' complaint and referred it to the "Research Department." (Id. , Ex. D.) Nationstar subsequently responded to the Pembertons on March 27, 2017-a response which expressly acknowledged that it concerned Form 1098 reporting. (Id. ¶ 16, Ex. E) ("This is in response to your request received March 3, 2014 regarding the 2013 Mortgage Interest Statement Form (Form 1098).") Nationstar did not contend that deferred interest is not deductible or that it could not report deferred interest amounts in a Form 1098. (Id. ¶ 16, Ex. E.) Rather, Nationstar rejected the Pembertons' claim on the grounds that: (1) "[t]here was [sic] no deferred amounts or negative amortization on your loan for the period of time that Nationstar has been the servicer" and (2) "we (sic) were not provided with any previously deferred interest amounts from the prior servicer nor is there any way for us to calculate amounts prior to when we acquired your loan." (Id. ¶ 16, Ex. E.) The Pembertons challenge Nationstar's investigation into their complaint by alleging that they were "easily able" to obtain their payment history from their prior loan servicer. (Id. ¶ 17.)
Applying the Biakanja factors to these allegations, the Court finds that the Pembertons have adequately alleged a separate duty. First, Nationstar's investigation of the Pembertons' complaint and response was intended to affect them because it was expressly directed to the Pembertons and impacted whether they could amend their tax return. See, e.g., Dougherty v. Bank of Am., N.A. , 177 F.Supp.3d 1230, 1258 (E.D. Cal. 2016) (defendant bank's and loan servicer's efforts to assist plaintiff were intended to affect plaintiff because the result of those efforts would affect plaintiff).
Second, although the Pembertons expressly told Nationstar the basis for their *1061 complaint, Nationstar refused to provide the Pembertons with a revised Form 1098. The bases of Nationstar's refusal, however, run contrary to how deferred interest works. First, the fact that the Pembertons did not defer interest while Nationstar was their servicer cannot provide a basis for Nationstar's refusal to account for such interest because deferred interest is paid at a later date. (FAC ¶¶ 4, 12.) Second, Nationstar's allegation that it was not provided deferred interest amounts from the prior servicer cannot be squared with the Pembertons' allegations that they were able to obtain such information and that their overall loan balance was greater than the original amount borrowed. (Id. ¶¶ 9, 17.) The existence of deferred interest would also have been readily apparent from a comparison of the outstanding principal with the original principal. Due to Nationstar's refusal, the Pembertons allege that they have been unable to correctly state their taxes or seek a higher interest deduction. (FAC ¶ 22.) This alleged conduct shows a high degree of certainty that the Pembertons suffered harm that was foreseeable and closely connected with Nationstar's conduct. See, e.g., Gerbery v. Wells Fargo Bank, N.A. , No. 13-CV-614-MMA(DHB), 2013 WL 3946065, at *12 (S.D. Cal. July 31, 2013) ; see also Powell v. Wells Fargo Home Mortg. , No. 14-cv-04248-MEJ, 2017 WL 840346, at *9 (N.D. Cal. Mar. 3, 2017) (defendant bank had a duty of care based on plaintiff's allegations that defendant mishandled his loan modification); Robinson v. Bank of Am. , No. 12-CV-00494-RMW, 2012 WL 1932842, at *7 (N.D. Cal. May 29, 2012) (denying motion to dismiss negligence claim when, inter alia , plaintiff alleged that defendant bank engaged in contradictory and somewhat misleading communications with plaintiff). Accordingly, the Court concludes that the second through fourth Biakanja factors weigh in favor of a duty.
Nationstar's moral blame is also greater with respect to the Pembertons' allegations on this issue given its role. Nationstar purchased the Pembertons' loan from a different servicer, services their loan, undertook an investigation into the Pembertons' complaint, and, based on the allegations, had the discretion regarding whether to issue a revised Form 1098. See Gerbery , 2013 WL 3946065, at *12. The policy of preventing future harm is particularly compelling. The Pembertons' allegations show that borrowers who have deferred interest and whose loans Nationstar services face the risk of future harm, even when they expressly inform Nationstar regarding its lack of reporting deferred interest. Nationstar acknowledges that loan servicers have "divergent practices regarding the reporting of capitalized interest." (ECF No. 55 at 10.) At oral argument, it became clear that some loan servicers and banks do in fact report deferred interest, even in the absence of clear guidance from the IRS about whether and when to do so. In this context, the Pembertons' allegations counsel that the policy of preventing future harm points toward a duty. Accordingly, the Court finds that the Biakanja factors support finding a duty of care on this conduct.
F. The Request for Declaratory Relief Is Subject to Dismissal
The Pembertons' fifth cause of action is for a declaratory judgment to "resolve the issue as to whether Nationstar is correctly reporting Class Members' mortgage interest payments on Form[s] 1098[ ] and whether Nationstar should be required to provide corrected [Forms 1098] to the Class Members for all years in which its policies did not conform to law." (FAC ¶ 66.) Nationstar contends that the Declaratory Judgment Act and the Anti-Injunction Act bar the Pembertons' claim *1062 for declaratory relief. (ECF No. 55 at 32.) The Court agrees that the claim must be dismissed to the extent it seeks a declaration regarding the lawfulness of Nationstar's Form 1098 reporting under Section 6050H and its implementing regulations.
The Declaratory Judgment Act provides that declaratory relief is not available in a case within a court's jurisdiction "with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986..." 28 U.S.C. § 2201(a) (emphasis added). The Anti-Injunction Act in turns provides that subject to certain exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by an person ..." 26 U.S.C. § 7421(a). "The purpose of the federal tax exception to the Declaratory Judgment Act is to protect the government's ability to assess and collect taxes free from pre-enforcement judicial interference, and to require that disputes be resolved in a suit for refund." California v. Regan , 641 F.2d 721, 722 (9th Cir. 1981). "The federal tax exception of [the Declaratory Judgment Act] is 'at least as broad as the Anti-Injunction Act.' " Id. (citing Bob Jones Univ. v. Simon , 416 U.S. 725, 732 n.7, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) ); Daines v. Alcatel, S.A. , 105 F.Supp.2d 1153, 1158 (E.D. Wash. 2000) ("[A]lthough the Declaratory Judgment Act exception would appear to prohibit a wider range of court action than the Anti-Injunction Act, the Declaratory Judgment Act is read to be coextensive with the Anti-Injunction Act.... [T]ogether, [they] prohibit only injunctive relief which would restrain the assessment or collection of federal taxes."). There are only two exceptions to the Declaratory Judgment Act's bar on declaratory relief: (1) when the government could under no circumstances ultimately prevail and where the prerequisites for equity jurisdiction are met and (2) an aggrieved party has no access at all to judicial review. Id. at 723 (citing, inter alia , Bob Jones Univ. , 416 U.S. at 742, 746, 94 S.Ct. 2038 ).
The Court acknowledges that unlike the plaintiffs in Regan and Daines , the Pembertons do not seek to exempt Nationstar from filing a Form 1098, nor to withdraw forms already provided to the IRS, but rather focus on the accuracy of information reported in the forms. See Regan , 641 F.2d at 722 (the State of California sought declaratory and injunctive relief from the requirement that it file an annual information return with the IRS pursuant to ERISA provision governing employee pension benefit plans); Daines , 105 F.Supp.2d at 1154 (plaintiff sought a declaratory judgment that defendants should not have issued certain Form 1099s and an order directing defendants to rescind the forms).
Yet the possibility that the issuance of a declaratory judgment that Nationstar's Form 1098 reporting was and is wrongful under Section 6050H, as a matter of law, may have some impact on the IRS's discretion regarding what an interest recipient must report to comply with Section 6050H and the IRS's implementing regulations. The Pembertons do not assert that any exception to the Declaratory Judgment Act's prohibitions applies. The possibility of interference thus counsels that the relief the Pembertons seek is inappropriate under the Declaratory Judgment Act. See Daines , 105 F.Supp.2d at 1154 ; see also Neely v. JP Morgan Chase Bank , N.A., No. 16-cv-01924, ECF No. 72 at 7-8 (C.D. Cal. April 10, 2018). The Court concludes that, as pleaded, the declaratory relief the Pembertons seek turns on a controversy "with respect to federal taxes within the meaning of the Declaratory Judgment Act." Regan , 641 F.2d at 722 ; see also Neely v. JP Morgan Chase Bank , N.A., No. 16-cv-01924, ECF No. 72 at *1063 7-8 (C.D. Cal. April 10, 2018) (dismissing claim for declaratory relief under the Declaratory Judgment Act with respect to relief similar what the Pembertons request). Accordingly, the Court dismisses the Pembertons' claim for declaratory relief with prejudice insofar as it concerns (1) a declaration that Nationstar's Form 1098 reporting is wrongful under Section 6050H and relatedly (2) an order requiring Nationstar to issue revised Forms 1098 that account for deferred interest as part of interest paid in order to comply with Section 6050H.
The Court, however, does not find that the Declaratory Judgment Act or the Anti-Injunction Act otherwise preclude any declaratory or injunctive relief the Court could order in this case.[24] As the Court has previously explained, while this case undoubtedly is informed by the federal tax scheme, "[t]he Pembertons are suing Nationstar for its completely separate actions and omissions, which resulted in negative tax consequences." Pemberton v. Nationstar Mortgage LLC , 2017 WL 4759018, at *7 (citation and internal quotation omitted). Declaratory relief which focuses on Nationstar's conduct and does not interfere with the IRS's tax determinations could properly proceed.
For example, this Court could declare Nationstar's investigation of the Pembertons' complaint regarding deferred interest payments and subsequent refusal to provide supplemental information to have been negligent. Relatedly, the Court could properly order Nationstar to provide the Pembertons and similar individuals with supplemental information regarding deferred interest payments. The Court could also properly order Nationstar to provide information to the IRS regarding deferred interest, identified separately from the payments that no one doubts must be reported on a Form 1098 to satisfy Section 6050H and its implementing regulations. The provision of supplemental information on deferred interest would not mandate that such payments must be treated as deductible by the IRS, but it would provide information of which the IRS could take notice to make its own determinations-particularly as it decides how to treat deferred interest payments for the purposes of the home mortgage interest deduction.[25] The FAC, however, does not request these forms of declaratory relief. Because the Pembertons may be able to seek other forms of declaratory relief, the Court grants the Pembertons leave to amend to clarify the declaratory relief they seek.
G. The Injunctive Relief Claim Is Improper
Nationstar argues that the Pembertons' sixth cause of action, entitled *1064 "preliminary and permanent injunction," should be dismissed because injunctive relief is not a separate cause of action. (ECF No. 55 at 35.) The Court agrees. "Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action." Cox Commc'ns. PCS, L.P. v. City of San Marcos , 204 F.Supp.2d 1272, 1282 (S.D. Cal. 2002) (citing BLACK'S LAW DICTIONARY 201 (1979) ); see also Rockridge Trust v. Wells Fargo, N.A. , 985 F.Supp.2d 1110, 1167 (N.D. Cal. 2013) (same); Mehta v. Wells Fargo Bank, N.A. , 737 F.Supp.2d 1185, 1205 (S.D. Cal. 2010) (same). Accordingly, the Court dismisses the Pembertons' sixth cause of action for injunctive relief.
H. The "Common Law Exclusive Enforcement Doctrine" Does Not Exist, Nor Does It Warrant Dismissal
As a final matter, the Court addresses Nationstar's "common law exclusive enforcement doctrine" argument. Nationstar argues that the Pembertons' state law claims are "barred by the common-law doctrine of exclusive enforcement." (ECF No. 55 at 5, 10-16.)[26] According to Nationstar, Congress intended that the IRS would have the "exclusive" power to enforce Section 6050H and permitting the Pembertons' claims to proceed would interfere with that power. (Id. at 2.) In response, the Pembertons argue that Nationstar's argument is based on a doctrine that does not exist and confuses the question whether there is a federal private right of action under Section 6050H with whether a violation of the statute can be a predicate for state law claims. (ECF No. 54 at 11, ECF No. 60 at 3.)
Nationstar's reliance on the "exclusive enforcement doctrine" stems from the district court's decision in Smith v. Bank of America, N.A. , No. 14-cv-6668-DSF(PLA), 2015 WL 12979198 (C.D. Cal. Feb. 3, 2015), which was vacated and remanded by the Ninth Circuit, 679 Fed. App'x 549, 550 (9th Cir. 2017). In ruling on Bank of America's initial motion to dismiss, the Smith court determined that the plaintiffs sought to enforce a statute that does not create a private right of action and "falls within the IRS's comprehensive enforcement and regulatory scheme." Id. at *3. The Smith court identified five "factors" as ones that courts have considered to determine whether "an agency possesses exclusive authority to enforce a statute or claim": "(1) whether the statute underlying the plaintiff's claim provides for a private right of action; (2) whether the regulatory scheme includes an administrative enforcement mechanism; (3) whether the plaintiff could obtain administrative relief directly from the agency; (4) whether administrative decisions are judicially reviewable; and (5) whether the agency administers and enforces the law on which the defendant's purported liability is based." Id. The Smith court found that the plaintiffs failed each of these factors. Nationstar faults the Pembertons for failing to distinguish their case from the vacated Smith opinion and its "exclusive enforcement doctrine" analysis. (ECF No. 55 at 15.)
This Court can ascertain no "exclusive enforcement doctrine" which mandates dismissal of the Pembertons' state law claims. What Nationstar dubs as the "common law *1065 exclusive enforcement doctrine" is in fact familiar inquiries this Court has already undertaken and determined do not preclude the Pembertons' state law claims. For example, the first factor the Smith court identified was "whether the statute underlying the plaintiffs' claims provides for a private cause of action." Smith , 2015 WL 12979198, at *3. This purported factor is the familiar question a federal court asks to determine whether a plaintiff may assert a cause of action under a particular federal statute. See Smith , 2015 WL 12979198, at *3 (citing Transamerica Mortg. Advisors, Inc. v. Lewis , 444 U.S. 11, 23, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ; Touche Ross & Co. v. Redington , 442 U.S. 560, 572, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) ; Greene v. Sprint Commc'ns Co. , 340 F.3d 1047, 1050 (9th Cir. 2003) ). This Court has already determined that Section 6050H lacks a private cause of action and that the Pembertons may nevertheless be able to assert common law theories of liability. (ECF No. 17.) Although several of the Pembertons' claims are legally insufficient, that is an issue separate from whether the claims may be asserted at all.
The remaining four factors of the "exclusive enforcement doctrine" concern the extent and nature of a federal administrative scheme and do not mandate dismissal. Like Bank of America in the Smith case, Nationstar previously asserted that the IRS has "exclusive jurisdiction" over the issues raised in this case. (ECF No. 11 at 12-13.) Although the Court did not explicitly address the argument, the Court suggested that "[i]t is possible that the Form[s] 1098[ ], if inaccurate, are challengeable with the IRS or under a common law theory[.]" (ECF No. 17 at 4.) That suggestion necessarily rejected Nationstar's exclusive jurisdiction argument. Likewise, this Court's imposition of a primary jurisdiction stay forecloses the argument that the IRS is the "exclusive" authority to address the Pembertons' claims. The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." Syntek Semiconductor Co. v. Microchip Tech. Inc. , 307 F.3d 775, 780 (9th Cir. 2002) (emphasis added). The doctrine does not "implicate[ ] the subject matter jurisdiction of the federal courts." Id. By its nature, the doctrine recognizes that federal courts and administrative agencies have concurrent jurisdiction over an issue for which agency guidance may be appropriate. The Court's decision to implement a primary jurisdiction stay therefore rested on a rejection of Nationstar's exclusive jurisdiction argument for dismissal. Accordingly, the Court rejects Nationstar's "common law exclusive enforcement" argument at this stage as well.
IV. CONCLUSION & ORDER
For the foregoing reasons, the Court HEREBY ORDERS that:
1. The Court DISMISSES WITH PREJUDICE the Pembertons' claims for breach of contract (Count 1); breach of the implied covenant of good faith (Count 2); a UCL claim under the unlawful and fraudulent prongs (Count 4); the declaratory judgment request as pleaded (Count 5); and fraud (Count 7).
2. The Court DISMISSES WITHOUT PREJUDICE the Pembertons' claim for a preliminary and permanent injunction (Count 6).
3. The Court SUSTAINS the Pembertons' UCL unfair prong (Count 4) and negligence claims (Count 8).
*1066 4. The Pembertons are GRANTED LEAVE TO AMEND the First Amended Complaint consistent with this Order. The Pembertons may file a Second Amended Complaint no later than July 23, 2018 . Failure to file an amended complaint by this date will result in this case proceeding only as to those claims not dismissed by this Order. Any amended pleadings should comply with Local Rule 15.1, by providing the Court with a version of the amended pleadings showing how it differs from the previous pleadings. See S.D. Cal. Civ. L.R. 15.1. All claims dismissed by this Order and previously dismissed claims (i.e. , violation of Section 6050H, Count 3) must not be asserted in the Second Amended Complaint.
IT IS SO ORDERED.

Nationstar's argument is based on the principle that "fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." See Sosa v. DIRECTV, Inc. , 437 F.3d 923 (9th Cir. 2006) ; Miller v. Yokohama Tire Corp. , 358 F.3d 616, 621 (9th Cir. 2004). This general principle regards statements of domestic law as expressions of opinion that cannot support fraud liability, even if the opinions are false. Miller , 358 F.3d at 621. Because Section 6050H calls for factual information, the principle is inapplicable here.

Plaintiffs also argue that although this Court has determined that 6050H does not create a private right of action, a violation of the statute can serve as the predicate for a UCL violation. (ECF No. 54 at 25.) A party may not bring a UCL claim based on the alleged violation of another statute only if that statute has an express bar to private enforcement, as reflected in the statute's text or legislative history. Smit v. Charles Scwhab & Co., Inc. , No. 10-CV-03971-LHK, 2011 WL 846697, at *3 (N.D. Cal. Mar. 8, 2011) ; Ferrington v. McAfee, Inc. , No. 10-cv-01455-LHK, 2010 WL 3910169, at *15 (N.D. Cal. Oct. 5, 2010) ; Hartless v. Clorox Co. , No. 06CV2705 JAH(CAB), 2007 WL 3245260, at *4 (S.D. Cal. Nov. 2, 2007). Nothing in Section 6050H or its legislative history expressly bars private enforcement by any means whatsoever. The Court readily acknowledges that the Pembertons are not barred from asserting an unlawful prong claim, even if the claim is ultimately implausible.

A third test used to assess UCL unfairness prong claims "borrows from [S]ection 5 of the Federal Trade Commission Act, finding 'unfair' business practices where (1) the consumer injury is substantial, (2) any countervailing benefits to consumers or competition do not outweigh the injury, and (3) the consumers could not reasonably avoid the injury." McVicar v. Goodman Global, Inc. , 1 F.Supp.3d 1044, 1054 (C.D. Cal. 2014) (citations omitted). The Ninth Circuit has rejected this test in consumer cases, finding that the test applies to anti-competitive conduct. See Lozano v. AT&T Wireless Servs Inc. , 504 F.3d 718, 736 (9th Cir. 2007). Accordingly, the Court does not apply it to the Pembertons' unfair prong claim.

Of course, in practice, courts may effectively collapse the unlawful prong and the unfair prong, as understood by the public policy test, when the violation of a law is shown. See, e.g., Becerra v. GM LLC , 241 F.Supp.3d 1094, 1111 (S.D. Cal. 2017) (finding that "unfair" business practice was "tethered to a legislatively declared policy" because the pleadings "alleg[ed] violations of the TREAD Act and a Federal Safety Standard"); Backus v. General Mills , 122 F.Supp.3d 909, 930 (N.D. Cal. 2015) ("For the same reason that Backus sufficiently alleged that the sale of the baking mixes was 'unlawful' under the UCL ... he has also sufficiently alleged that their sale violated the Sherman Act's public policy of prohibiting the sale of adulterated food.").

One central policy objective attributed to the home mortgage interest deduction is to encourage home ownership. See Joint Comm. on Taxation, 100th Cong., General Explanation of the Tax Reform Act of 1986, at 263-64 (1987) ("Encouraging home ownership is an important policy goal, achieved in part by providing a deduction for residential mortgage interest."); S. Rep. No. 99-313, at 804 (1986) (same); H.R. Rep. No. 99-426, at 297 (1985) (same); see also Fid. Int'l Currency Advisor A Fund, LLC v. United States , 747 F.Supp.2d 49, 69 (D. Mass. 2010) ("A taxpayer may buy a house with a mortgage in order to take advantage of the deductibility of mortgage interest.").

Nationstar also baldly asserts that its reporting practice is not unfair because "[p]laintiffs could have also made fully amortizing payments on their Option ARM loan, or not entered into an Option ARM in the first place." (ECF No. 55 at 31.) The Pembertons expressly allege that these types of loans "were primarily marketed to consumers who wanted to minimize their monthly payment so they could 'afford' a home that would otherwise be too expensive for them based upon their available cash flow," and thus, "borrowers with negative amortization loans, including Plaintiffs, overwhelmingly" deferred interest under the loans. (FAC ¶ 4.) The Court fails to see how the Pembertons' exercise of a contractual option created by a sophisticated lending institution, which it marketed to a particular type of consumer that would likely use it, could prevent the Pembertons from showing harm.

Nationstar's reliance on Loeffler v. Target Corporation , 58 Cal.4th 1081, 171 Cal.Rptr.3d 189, 324 P.3d 50 (2014), to argue for UCL abstention is unavailing. The Loeffler plaintiffs were barred from seeking relief under the UCL for state taxes they alleged were wrongfully taxed by the defendant. But the California Supreme Court determined that the California tax code "provide[d] the exclusive means by which the plaintiffs' dispute over the taxability of a retail sale may be resolved" and the lawsuit was "inconsistent with the tax code." Id. , 171 Cal.Rptr.3d 189, 324 P.3d at 54. The case is distinguishable because Section 6050H is merely a reporting provision; it does not require Nationstar to collect taxes from the Pembertons.

This limit on the imposition of a duty of care on a mortgage provider or loan servicer has particular force in negligence cases involving lending activities, such as offering or modifying a loan. Federal courts have split on whether and when a duty of care may exist in such cases. See Hernandez v. Select Portfolio Servicing, Inc. , No. CV 15-01896 MMM (AJWx), 2015 WL 3914741, at *21-22 (C.D. Cal. June 25, 2015) (contrasting cases in which district courts in California have found a duty of care for loan modification under California negligence law with those that have not). But these cases turn on whether there is a common law duty regarding these general loan activities. See Colom v. Wells Home Mortgage, Inc. , No. C-14-2410 MMC, 2014 WL 5361421, at *3 (N.D. Cal. Oct. 20, 2014) (dismissing loan modification negligence because "[a] lender [does] not have a common law duty of care to offer, consider, or approve a loan modification"). In the cases which find no duty, there is a sound policy reason to do so. See Casault v. Fannie Mae , 915 F.Supp.2d 1113, 1131 (C.D. Cal. 2012) ("[F]inancial institutions would be less likely to assist borrowers with defaulted loans if the financial institution would be held to a higher duty of care for exercising leniency."). This case, however, concerns a statutory reporting obligation placed on Nationstar. There is no suggestion that a duty of care pertaining to that statutory obligation would make Nationstar less likely to report interest payments, i.e. comply with its obligation, or less likely to engage in the underlying lending and servicing activities.

To challenge this general rule, the Pembertons assert that California law recognizes that "loan transactions between a mortgage finance company and the borrowers like the plaintiff involve 'more than the provision of a loan; they also include [the] financial services [of managing the loan].' " (ECF No. 54 at 24 (quoting Hernandez v. Hilltop Fin. Mortg., Inc. , 622 F.Supp.2d 842 (N.D. Cal. 2007) ).) The Pembertons' reliance on Hernandez is misplaced as the case considered whether the plaintiffs could maintain a claim under the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1770, et seq. The scope of statutory liability under the CLRA is not relevant to whether a duty exists with respect to Section 6050H reporting.

Based on a misreading of this Court's decision in Ruvalcaba , which involved parties not in privity, Nationstar contends that the Biakanja factors apply "only" when privity is absent. (ECF No. 55 at 26 (citing Ruvalcaba v. Ocwen Loan Servicing, LLC , No. 15-CV-00744-BAS(DHB), 2017 WL 2985121 (S.D. Cal. July 13, 2017) ).) The Biakanja factors, however, apply even when the parties are in privity. See Nymark , 283 Cal.Rptr. at 58 (applying Biakanja factors to borrower-client relationship); see also Kemp v. Wells Fargo Bank, N.A. , No. 17-cv-01259-MEJ, 2017 WL 4805567, at *6 (N.D. Cal. Oct. 25, 2017) ("[C]ourts still apply the Biakanja factors to determine whether a financial institution owes a duty of care to a borrower-client, even where the parties are in privity. " (emphasis added) (citing cases) ).

The notion that Revenue Ruling 70-647 creates or recognizes an independent duty for a taxpayer to keep track of loan payment records for tax purposes is not entirely accurate. The ruling expressly qualified that "[b]ecause the lender's records do not indicate when and how much interest is actually paid by the individual for purposes of deduction under section 163 of the Code," the taxpayer had to keep his own record of the loan. IRS Rev. Rul. 70-647, 1970-2 C.B. 38, 1970 WL 21200, at *2 (1970). In this case, however, Nationstar does keep records that pertain to deduction of the mortgage interest payments so that it can report those payments to the IRS and to the Pembertons. Moreover, even accepting that a taxpayer has his or her own duties, the allegation that the IRS rejects claims to an interest deduction higher than the amount reported in a servicer-provided Form 1098 prevents the Court from concluding that placing a duty on Nationstar "negates" that of the Pembertons.

Nationstar's reliance on Giacometti v. Aulla, LLC , 187 Cal.App.4th 1133, 114 Cal.Rptr.3d 724, 729 (2010) to argue against a duty is inapposite. That case concerned whether non-client plaintiffs could sue for professional negligence, a claim which California law treats more restrictively to permit only "intended beneficiaries of a transaction [to] recover." Giacometti , 114 Cal.Rptr.3d at 728 (quoting Bily v. Arthur Young & Co. , 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745 (Cal. 1992). The Giacometti court dismissed the plaintiffs' professional negligence claims because "in our case the restaurant's intention in hiring the accountants was not to benefit the employees but to fulfill a legal obligation to furnish pay information to the IRS.").
Nationstar relies on two additional cases to argue that no duty of care can exist with respect to its provision of Forms 1098. Neither case supports this. For one, Rumfelt did not find that there was no duty of care regarding W-2 reporting, but rather involved a plaintiff who failed to plead any facts which would show a federal claim. See Rumfelt v. Jazzie Pools, Inc. , No. 1:11CV217 JCC TCB, 2011 WL 2144553, at *4 (E.D. Va. May 31, 2011). The court expressly declined to address negligence claims under state law. Id. at *8. Second, Arvin did not concern whether a duty of care exists, but rather whether a private cause of action existed under federal law for the alleged misreporting there. Arvin v. Go Go Inv. Club , No. C 96-3264 FMS, 1996 WL 708589, at *4 (N.D. Cal. Dec. 5, 1996), aff'd , 129 F.3d 124 (9th Cir. 1997). The case is inapposite in light of the Court's dismissal of a claim under Section 6050H.

The Pembertons also assert that "[t]he facts alleged ... support a negligence per se theory." (ECF No. 54 at 22 n.18.) However, the doctrine "does not provide a duty of care, but may establish a relevant standard when a duty already exists." Alvarez v. MTC Fin. Inc. , No. 3:16-cv-06429-WHO, 2017 WL 1861844, at *4 n.9 (N.D. Cal. May 9, 2017). Thus, the Court does not rely on the negligence per se argument in its duty analysis.

Moreover, the Declaratory Judgment Act and the Anti-Injunction Act, which concern the power of a federal court to order certain relief, do not appear to limit what Nationstar can voluntarily agree to as a private party. For example, Nationstar could voluntarily agree to report deferred interest payments in the Forms 1098 it provides to the IRS and individuals like the Pembertons. In fact, one district court approved a settlement agreement in which a defendant bank "agreed to issue amended Forms 1098 to individuals for tax years 2010-2013" and "to report deferred-interest payments on Forms 1098 going forward." Horn v. Bank of Am., N.A. , No. 3:12 cv-1718-GPC-BLM, 2014 WL 1455917, at *4 (S.D. Cal. April 14, 2014). There has been no suggestion that the IRS rejected these forms or that the inclusion of deferred interest payments was unlawful.

There is an anecdotal basis to believe that the IRS treats deferred interest payments on a home mortgage loan to be deductible in certain circumstances. See, e.g., Strugala v. Flagstar Bank, FSB, 2017 WL 3838439, at *2 (N.D.Cal. Sept. 1, 2017) (observing that IRS provided refund to a taxpayer who amended her tax return to report a higher amount of deferred interest paid to defendant bank).

Like Nationstar, Defendants in three other actions have sought dismissal of state law claims on the basis of the "exclusive enforcement doctrine." See Neely v. JP Morgan Chase Bank , N.A., No. 16-cv-1924-AG (KESx), ECF No. 60 (C.D. Cal. Feb. 12, 2018) (motion for judgment on the pleadings); Smith v. Bank of America, N.A. , No. 14-cv-6668-DSF(PLA), ECF No. 60-1 (C.D. Cal. Jan. 17, 2018) (motion to dismiss); Rovai v. Select Portfolio Servicing, Inc. , No. 14-cv-1738-BAS-WVG, ECF No. 66 (S.D. Cal. Dec. 11, 2017).