[No. B217615. Second Dist., Div. Four. Aug. 25, 2010.]

EMANUELE GIACOMETTI et al., Plaintiffs and Appellants, v. AULLA, LLC, et al., Defendants and Respondents.

1134

COUNSEL

Albert F. Coombes for Plaintiffs and Appellants.

Chapman, Glucksman, Dean, Roeb & Barger, Randall J. Dean and J. Andrew Wright for Defendants and Respondents.

OPINION

**EPSTEIN, P. J.**—In this appeal we consider whether an accounting firm has a duty of care answerable in negligence to its client's employees when hired to prepare W-2 wage and tax statements for the client. The trial court sustained the demurrer to the employees' second amended complaint against the accounting firm for professional negligence without leave to amend. We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Appellants Emanuele Giacometti, Marco Pellichero, and Alfredo Fuduli (collectively employees) were waiters at Aulla, LLC, doing business as Ago Restaurant (restaurant). According to the allegations in the second amended complaint, the charging pleading, the restaurant required waiters and busboys to pool 40 percent of their tips.[1] The employees alleged that the restaurant managers improperly allocated a percentage of the tips to themselves.

Respondents Gumbiner Savett Inc., a professional accounting firm, and Michael Rieff, a certified public accountant at the firm (accountants), were hired by the restaurant to prepare yearend documents with respect to earnings and taxes. According to the employees, in preparing W-2 documents, the accountants included the tip money taken by the restaurant managers as income to the employees. This resulted in overreporting the employees' income by as much as $30,000 per employee. The employees alleged that the

---

[1] Allegations about the improper pooling of tips and retaining of tip money are asserted against the restaurant and its managers, who are not parties to this appeal.

inaccuracy in the figures reported in their W-2 forms subjected them to investigation by the Internal Revenue Service (IRS). Giacometti was audited by the IRS and has been subjected to litigation. After he was notified of his audit, Giacometti wrote to the accountants requesting that his W-2 form be corrected. The accountants did not correct the statement of income reported on his form.

The employees brought this action against the restaurant, its managers, the accounting firm and the individual accountant. In their original complaint, the employees alleged causes of action against the restaurant and its managers for violations of the Labor Code and Business and Professions Code. They asserted three causes of action against the accountants: negligence, conspiracy, and intentional infliction of emotional distress. They alleged that the accountants negligently or fraudulently overreported income on their W-2 forms. The accountants' demurrer was sustained with leave to amend.

The employees filed a first amended complaint, again alleging causes of action for negligence, conspiracy, and intentional infliction of emotional distress. It included additional facts but did not include additional theories of liability. The accountants again demurred. The trial court sustained the demurrer to the causes of action for conspiracy and for intentional infliction of emotional distress without leave to amend. The demurrer to the cause of action for negligence was sustained with leave to amend.

The employees filed their second amended complaint alleging a single cause of action against the accountants for professional negligence. The accountants again demurred. The trial court sustained the demurrer without leave to amend and dismissed the employees' action against the accountants with prejudice.[2] The employees appeal the order dismissing their action against the accountants. The appeal raises only the duty of an accountant hired by an employer to accurately report employees' income to the IRS.

## DISCUSSION

On appeal from a judgment dismissing an action following the sustaining of a demurrer, we consider the legal sufficiency of the complaint and treat the demurrer as accepting as true all material facts properly pleaded. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We review de novo "whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if

---

[2] The restaurant entered into a conditional settlement with the employees on May 1, 2009.

it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

■ To state a cause of action for professional negligence, a party must show "(1) the duty of the professional to use such skill, prudence and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1682 [19 Cal.Rptr.2d 601].) "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 [11 Cal.Rptr.2d 51, 834 P.2d 745] (*Bily*).) "Where there is no legal duty, the issue of professional negligence cannot be pled because with the absence of a breach of duty, an essential element of the cause of action for professional negligence is missing." (*Major Clients Agency v. Diemer* (1998) 67 Cal.App.4th 1116, 1132 [79 Cal.Rptr.2d 613].) In this case, the duty element is the employees' obstacle.

■ The general rule is that privity of contract is a requisite to a professional negligence claim. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737].) *Biakanja v. Irving* (1958) 49 Cal.2d 647 [320 P.2d 16] (*Biakanja*), is the leading California case discussing whether a legal duty should be imposed absent privity of contract. In *Biakanja*, a notary public prepared a will for the decedent and negligently failed to have it properly attested. The court allowed the decedent's brother, the sole beneficiary of the will, to recover from the notary public. In extending the duty of care to the beneficiary of the will in the absence of privity, the court articulated factors to be considered in such a decision: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Biakanja, supra*, 49 Cal.2d at p. 650.) Later cases have considered additional factors, including whether extending liability would impose an undue burden on the profession. (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 589 [15 Cal.Rptr. 821, 364 P.2d 685] [lawyer drafting a will had duty to intended beneficiary where lawyer failed to properly draft the will].)

More recent cases have been reluctant to expand the *Biakanja* holding. In *Bily*, the court applied the *Biakanja* factors and declined to "treat the mere

presence of a foreseeable risk of injury to third persons as sufficient, standing alone, to impose liability for negligent conduct." (*Bily, supra*, 3 Cal.4th at p. 399.) The court's rejection was premised on three concerns: (1) liability would be "far out of proportion to its fault"; (2) the availability of " 'private ordering' " among parties through contract; and (3) the costs to auditors of increased liability and decreased availability of auditing services outweigh the potential benefit of greater accuracy in reporting. (*Id.* at p. 398.) The court determined that imposition of liability is out of proportion to fault given "the secondary 'watchdog' role of the auditor," explaining that "[a]n auditor is a watchdog, not a bloodhound. [Citation.] As a matter of commercial reality, audits are performed in a client-controlled environment. The client typically prepares its own financial statements; it has direct control over and assumes primary responsibility for their contents. [Citation.] . . . Because the auditor cannot in the time available become an expert in the client's business and record-keeping systems, the client necessarily furnishes the information base for the audit." (*Bily, supra*, 3 Cal.4th at pp. 398–399.) The *Bily* court held that intended beneficiaries of a transaction may recover under a theory of negligent misrepresentation according to the principles in the Restatement Second of Torts, section 552,[3] but only the client may recover under a theory of general negligence. (3 Cal.4th at p. 376.)

*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566 [32 Cal.Rptr.3d 244] (*LeVine*) is factually similar to the present case. In that case, an accountant was hired by a partnership to provide accounting services, which included calculation of each partner's share of partnership profits. (*Id.* at pp. 570–571.) The partnership notified the accountant that the partnership agreed to a change in the method of allocating partner income. (*Ibid.*) Before preparing a partner's K-1 schedule, the accountant confirmed and then followed the partnership's instructions, altering the methodology in calculating profits. (*Ibid.*) In the partner's suit against the accountant for professional negligence, the court held that the accountant hired by the partnership to allocate profits under the partnership's instructions did not owe a duty to the individual partner. (*Id.* at p. 582.) The court adhered to *Bily*'s instructions, noting that " '[i]n applying the *Biakanja* factors [citation], we are necessarily required to make pragmatic assessments of the consequences of recognizing and enforcing particular legal duties.' [Citation.]" (*Id.* at p. 581.)

In assessing the extension of a duty, the *LeVine* court primarily considered the first three *Biakanja* factors: " 'extent to which the transaction was

---

[3] Under the Restatement Second of Torts, section 552, one who negligently supplies information is liable to a third party only if the information is intended for the guidance and benefit of the third party in a specific transaction or type of transaction known to the supplier. There are no allegations of negligent misrepresentation in this case, nor is that theory argued on appeal.

intended to affect the plaintiff' "; the " 'foreseeability of harm' to plaintiff"; and " 'the degree of certainty that the plaintiff suffered injury.' " (*LeVine, supra*, 131 Cal.App.4th at pp. 581, 582.) It concluded that a duty should not be imposed because it was not foreseeable that the partner would be harmed or affected since the partnership hired the accountant to make the calculation as instructed by the partnership. The accountant had no basis to believe the plaintiff had not agreed with or known about the change in the calculation, and there was no evidence of miscalculation. (*Id.* at p. 582.) Even though the accountant prepared the partner's K-1 and knew the function of that schedule, the transaction cannot be described as being done for the benefit of the individual partner. (*Ibid.*)

Similarly, in our case, the employees characterized the transaction as the restaurant hiring the accountants to provide accounting services, including preparation of W-2 forms for the employer. The employees do not allege the accountants were hired to compile or verify the numbers upon which their work was based, or that they failed to properly analyze payroll records. Nor are there allegations the accountants knew or had reason to believe the documents they prepared were based on incorrect information. The only notice came when employee Giacometti complained that the numbers were wrong. This was after the forms had been prepared and, apparently, after they had been filed. Like the accountant in *LeVine* who filled out the partner's K-1 according to the partnership's instructions, there is no allegation that the accountants were the sources of the inaccurate numbers or that they had an obligation to ascertain the accuracy of the income reported for each employee. Nor are there allegations in the charging pleading that the accountants knew of the errors or that they were in collusion with the restaurant. The only allegation was that the accountants were retained to prepare forms. The employees claim that it is foreseeable that incorrect information on their W-2 forms would harm them, but that alone does not create a duty.

Courts have found a duty owed to third parties where the sole purpose of the transaction was to benefit a third party. For example, in *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 111 [128 Cal.Rptr. 901], the court held that a law firm hired to draft an opinion letter on behalf of its client in order to secure a loan, had a duty to a lending company because it knew that the purpose of the opinion letter was to influence the loan company's conduct and harm to it was foreseeable. Cases such as *Biakanja* and *Roberts* "impose a duty to the third party beneficiary of legal services because that was the intention of the purchaser of the legal services—the party in privity. Thus, imposition of the duty carries out the prime purpose of the contract for services." (*Johnson v. Superior Court* (1995) 38 Cal.App.4th 463, 472 [45 Cal.Rptr.2d 312].) In contrast, in our case the restaurant's intention in hiring the accountants was not to benefit the employees but to fulfill a legal obligation to furnish pay information to the IRS.

None of the remaining *Biakanja* factors supports the existence of a duty in our case. These include: "the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Biakanja, supra*, 49 Cal.2d at p. 650.) There are no allegations that the inflated numbers were generated by the accountants, or that the accountants were employed to verify that the information was correct. The alleged harm to the employees was the overreporting of their income, not the accountants' preparation of forms based on these numbers. Like the circumstances in *LeVine*, whatever error occurred was the result of wrong information furnished to the accountants by the employer. (*LeVine, supra*, 131 Cal.App.4th at p. 582.)

██ In contrast, courts have imposed a duty to third parties in cases in which the professional had a primary role in the harm. For example, in *Nutmeg Securities, Ltd. v. McGladrey & Pullen* (2001) 92 Cal.App.4th 1435 [112 Cal.Rptr.2d 657], the court held that a corporation's accountant had a duty to the corporation's underwriter of its initial public offering because the accountant "prepared the financial statements it reviewed" and participated in creating the false financial statements. (*Id.* at p. 1443.) The court determined that the *Bily* analysis did not apply because the accountant's role was "not 'secondary,' but primary." (*Nutmeg Securities*, at p. 1443.) Also, in *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 857 [68 Cal.Rptr.3d 828], the court held that the defendant was liable to investment funds on a theory of negligent misrepresentation in connection with the issuance and sale of promissory notes. The reason was that, when the defendant prepared the offering memorandum, it had access to reliable nonpublic information that disproved its client's representation of its financial forecast and thus, the defendant "cannot be viewed as playing only a 'secondary role' in preparing the offering memorandum." (*Ibid.*) There are no such allegations in this charging pleading.

Finally, the policy of preventing future harm also weighs in favor of no duty. Again, the policy considerations in *Bily* are instructive. The *Bily* court was concerned that extending liability to auditors in the preparation of audits would impose liability out of proportion to fault given that "the auditor's role in the financial reporting process is secondary . . . ." (*Bily, supra*, 3 Cal.4th at p. 400.) The court pointed out that as a matter of commercial reality the client controls the information base for the audit. (*Id.* at p. 399.) Additionally, the court concluded that extending liability to auditors for all foreseeable parties would not result in "significantly greater accuracy without disadvantages," especially in light of the "inherent dependence of the auditor on the client and the labor-intensive nature of auditing." (*Id.* at p. 404.) The court then discussed the effects of increased liability and questioned whether auditors, as opposed to clients and third parties, would be "the most efficient absorbers of the losses from inaccuracies in financial information." (*Id.* at p. 405.) It

concluded that in the audit context no reason favors imposing liability on the auditor. (*Ibid.*) Further, increasing auditor's liability "could just as easily be an increase in the cost and decrease in the availability of audits and audit reports with no compensating improvement in overall audit quality." (*Id.* at pp. 404–405.) Imposition of a duty on accountants to question the reliability of their client's financials when they are hired to merely compile the data and fill out forms, would be outside the scope of what they were hired to do.

■ To summarize, the scope of the accountants' employment by the restaurant in this case was to prepare yearend financial documents, including W-2 forms. There are no allegations in the charging complaint that the accountants knew that the restaurant's representation of the employees' income was wrong at the time they prepared these documents, and there are no allegations that the accountants were hired to calculate, or in fact did calculate, the employees' income for purposes of yearend reporting. The accountants did not owe the employees a duty of care under the negligence theory alleged in the second amended complaint. The trial court properly sustained the demurrer to this cause of action without leave to amend.

### DISPOSITION

The judgment is affirmed. Respondents to have costs on appeal.

Manella, J., and Suzukawa, J., concurred.