Filed 11/3/25  Borchardt v. Mr. Handyman International CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOSEPHINE BORCHARDT et al.,<br><br>Cross-complainants and Appellants;<br><br>v.<br><br>MR. HANDYMAN INTERNATIONAL, LLC,<br><br>Cross-defendant and Respondent. | B330603<br><br>(Los Angeles County Super. Ct. Nos. 20STCV20169, 21STCV15057) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Timothy P. Dillon, Judge.  Affirmed.

Francesca Borchardt and Josephine Borchardt, in pro. per., for Cross-complainants and Appellants.

Gordon Rees Scully Mansukhani, Calvin E. Davis, Christopher R. Wagner and Candice S. Nam, for Cross-defendant and Respondent Mr. Handyman International.

## INTRODUCTION

The central question in this case is the extent of a franchisor's liability for the negligent actions of its franchisee. Appellants Francesca and Josephine Borchardt[1] brought a claim of professional negligence against respondent Mr. Handyman International, LLC (MHI), the franchisor of Freshly Minted, Inc. (Freshly Minted). Appellants' landlord, Joanna Ardalan, hired Freshly Minted to fix a leak and remediate mold at the house she rented to appellants. Appellants contend that Freshly Minted failed to properly perform the repairs and, in fact, made the uninhabitable conditions worse. They claim MHI, as the franchisor, is also liable for their damages.

After Ardalan sued appellants for breaching their lease, appellants filed a cross-complaint against multiple parties, including Ardalan, Freshly Minted, and MHI. Their negligence claim against MHI is the subject of this appeal. After giving appellants several opportunities to amend their cross-complaint, the trial court granted MHI's third motion for judgment on the pleadings without leave to amend, finding MHI did not owe a duty to appellants.

On appeal, appellants contend they sufficiently alleged facts showing MHI owed a duty to them under both direct and vicarious liability theories. We find no error and affirm the judgment.

## BACKGROUND

### I. Ardalan's Complaint

In May 2020, Ardalan filed a complaint against appellants, their sister, Genevieve Borchardt, and their mother, Gabriela Borchardt. Ardalan alleged that she leased a house to Josephine and Genevieve in late 2019. She contended that Josephine and Genevieve breached the lease agreement by obstructing efforts to make repairs and failing to pay rent. She also alleged claims for declaratory judgment and negligence against all of the Borchardts.

---

[1] We refer to Francesca and Josephine as appellants and all members of the Borchardt family by first name for clarity.

## II.   Appellants' Cross-Complaint

Appellants' operative pleading is a 102-page fifth amended cross-complaint (5ACC), alleging eight causes of action against 12 cross-defendants, including the claim for professional negligence against MHI.[2]  As relevant here, appellants allege that MHI is a Michigan limited liability company operating as a franchisor "in the business of licensing 'Mr. Handyman' franchises to franchisees."  Appellants also allege that Freshly Minted operated a Mr. Handyman franchise in California using the California contractor's license held by another franchisee, cross-defendant Mr. Handyman of California, Inc. (MHC).  The 5ACC refers to MHI, Freshly Minted, and MHC collectively as "Mr. Handyman."

The 5ACC alleges that Josephine and Genevieve entered into a one-year lease of the property with Ardalan on October 25, 2019, and that Francesca also lived in the residence.  Beginning in April 2020, appellants complained to Ardalan about various issues with the residence, including rodent and termite infestation and "toxic mold."  They allege that Ardalan failed to remedy these issues and that the residence became uninhabitable.  On June 9, 2020, cross-defendant David Quinto, Ardalan's attorney, notified appellants by email that "Mr. Handyman" would be inspecting the property the following day regarding a possible water leak causing the mold.

Appellants allege that on June 10, 2020, a technician for "Mr. Handyman" conducted an inspection at the residence.  For several days afterward, the same technician, along with other workers, conducted "illegal excavation and construction" at the residence.  Appellants allege that they complained to Ardalan and Quinto that the workers did not have the required permits.  Appellants further allege that the work caused flooding into a bedroom.  They claim an inspector from the Los Angeles Department of

---

[2]     The court granted judgment on the pleadings in favor of MHI as to prior versions of the cross-complaint, but granted appellants leave to amend. We grant MHI's unopposed motion to augment the record with documents related to its prior motion.  Appellants' cause of action for professional negligence against MHI is the only claim at issue in this appeal.  As such, we detail only the factual background relevant to that claim.

Building and Safety confirmed that the work was unpermitted and "unsafe," ordered the workers to stop construction, and issued a "Pink Slip."

Appellants allege Freshly Minted was "professionally negligent as the company hired to remediate the property's toxic mold and rat infestation." They allege Freshly Minted owed a duty to them by promising to repair the uninhabitable conditions in the residence and breached that duty by failing to exercise the appropriate skill, prudence, and diligence in undertaking the repairs. Appellants also allege that Freshly Minted breached the duty by operating without a licensed contractor and by conducting the work without the necessary permits. They allege that the worker from Freshly Minted made the uninhabitable conditions worse by causing flooding that "pushed the toxic black mold further into the home."

Appellants allege MHI was "professionally negligent as a franchisor," and was also vicariously liable for the actions of its agent and franchisee, Freshly Minted. They allege MHI "did not do their [*sic*] due diligence to ensure their franchisees are individually licensed, bonded, and cleared," and further that MHI "failed to ensure their franchisees are not engaging in illegal and unpermitted construction." In addition, they allege MHI "substantially control[led]" Freshly Minted's business because MHI "paid the entirety of the back taxes that Freshly Minted Inc. owed to the City of Los Angeles in 2021" and because MHI had "the absolute and complete right to terminate the [franchise] agreement."

Appellants allege they were third party beneficiaries of the contract between Ardalan and Freshly Minted as "the parties that were to benefit from the work performed." Further, based on that status, appellants allege they were also third party beneficiaries "of the relationship" between MHI and Freshly Minted because the "sole purpose" of the franchise agreement between Freshly Minted and MHI "is to benefit the consumers who use that franchise." Appellants allege MHI "exercised control in the day-to-day operations of their franchisees," citing portions of the franchise agreement, which they attached as an exhibit to the 5ACC.

The 2015 franchise agreement gives Freshly Minted the right to own and operate a franchise using the "Mr. Handyman" system for repair and

4

maintenance, as well as the associated trade and service marks, within a designated geographic territory.  The agreement requires Freshly Minted to assign to MHI a dedicated business telephone line, maintain a pre-approved answering service, use approved advertising and marketing materials, and operate the franchise in accordance with MHI's "System Standards."  The agreement also requires Freshly Minted to "secure and maintain in force all required licenses, permits, and certificates relating to the operations of the Franchised Business and . . . operate the Franchised Business in full compliance with all applicable local, state, and federal laws, rules and regulations."

The agreement provides that Freshly Minted is an independent contractor and "will not be deemed an employee of [MHI] for any purpose. . . . Nothing in this Franchise Agreement will be construed so as to create a partnership, joint venture or agency."  MHI further agrees that it will "not have the power to hire and fire [Freshly Minted] employees, and, except as expressly provided in this Franchise Agreement, we may not control or have access to your funds or expenditures, or in any other way exercise dominion or control over the Franchised Business."

## III.   Motion for Judgment on the Pleadings

MHI filed a motion for judgment on the pleadings arguing that appellants cannot show MHI owed a duty to them because there was no contractual privity between them.  Moreover, MHI contended that appellants' allegations that they are third party beneficiaries of the franchise agreement are too "attenuated, speculative, and insufficient" to establish a duty.  MHI argued that appellants failed to establish MHI's vicarious liability because they failed to demonstrate MHI asserted control over the daily operations of Freshly Minted.

Appellants, proceeding in propria persona throughout this case, argued in opposition that MHI knew Freshly Minted was operating without a license and thus had a "responsibility" to terminate the franchise agreement. Appellants argued MHI's failure "to enforce their franchise agreement" allowed Freshly Minted to engage in "illegal construction," which, in turn, "caused a perfect storm of damage."

5

The court granted MHI's motion in a written ruling on March 9, 2023. It found appellants failed to state a viable cause of action for professional negligence against MHI based on either direct negligence or vicarious liability.

The court found that the 5ACC failed to allege direct negligence because MHI did not contract with appellants or have a special relationship with them, as required for a claim of professional negligence. Further, the court found appellants were not the third party beneficiaries of the franchise agreement between MHI and Freshly Minted. The 5ACC "is devoid of any facts to show that the franchise agreement was intended to affect" appellants.

Finally, the court found appellants had not adequately alleged that MHI could be vicariously liable for the conduct of Freshly Minted, as the 5ACC fails to establish that MHI had the right of substantial control over Freshly Minted, or the reasonable perception of such control. MHI, therefore, lacked actual or ostensible agency over the franchise. The court also noted that appellants' relationship with MHI was further attenuated because they did not contract with Ardalan and therefore were "two levels removed" from MHI. The court denied leave to amend, finding that appellants "have had several attempts to amend. There is every indication that leave to amend would be futile and none that leave to amend would be productive."

The court entered judgment in favor of MHI and against appellants on March 15, 2023. Appellants filed a motion for order setting aside the judgment and for new trial, which the court denied. Appellants timely appealed.

## DISCUSSION

Appellants fail to allege a viable cause of action for professional negligence against MHI based on direct or vicarious liability. In short, the 5ACC fails to establish any duty MHI owes to appellants. The trial court did not err in granting MHI's motion for judgment on the pleadings.

## I.     Standard of Review

Judgment on the pleadings in favor of a defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action against that defendant. (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).) "'A motion for

6

judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law. . . .' Courts may consider judicially noticeable matters in the motion as well." (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777, quoting *Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.) We "'give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.'" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*), quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

We review the denial of leave to amend the complaint for abuse of discretion. (See *Zelig, supra,* 27 Cal.4th at p. 1126.) We determine "'whether there is a reasonable possibility that the defect can be cured by amendment. . . . The burden of proving such reasonable possibility is squarely on the plaintiff.'" (*Ibid.*, quoting *Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

## II.    Direct Liability

"'Actionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury.'" (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 573.) "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 (*Bily*).) Appellants' professional negligence claim against MHI involves the "duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

In general, privity of contract is required for a duty of care in a professional negligence claim, absent special circumstances. (See *Giacometti v. Aulla, LLC* (2010) 187 Cal.App.4th 1133, 1137, citing *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 342.) Appellants have no such privity with MHI. Their landlord hired MHI's franchisee, Freshly Minted, to remediate mold and

7

remove pests from the home. Neither appellants nor MHI were parties to that agreement. Instead, appellants allege that MHI's duty arose out of the franchise agreement with Freshly Minted and that MHI negligently failed to ensure Freshly Minted had the proper license as required under that agreement.

In *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*), our Supreme Court set forth factors for determining whether to impose tort liability in favor of a third party for a contracting party's negligent performance of a contract. (*Id.* at p. 650; see also *Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 838.) "Those criteria are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 804 (*J'Aire*), discussing *Biakanja, supra*, 49 Cal.2d at p. 650.)

Appellants have not alleged facts that would establish any special circumstances giving rise to a duty of due care owed to them as third parties. They do not and cannot allege that MHI and Freshly Minted entered into the general franchise agreement in 2015 with the specific intent to affect appellants by performing work on their rental home five years later. Appellants were not customers of the franchisee and have alleged no facts to show that they were intended or foreseeable third parties to the franchise agreement. Under *Biakanja*, they cannot establish that MHI owed them a duty of care. Appellants seek to extend the reach of special circumstances liability by several degrees, holding a franchisor liable for negligent conduct by a franchisee that harmed a franchise customer's tenant. To accept appellants' argument that MHI had a duty to them because it generally knew that Freshly Minted's work "would directly affect others, such as the Borchardts" would effectively extend liability for a franchisor to any downstream recipient of a franchisee's services. Appellants fail to support that proposition with any authority.

8

Even in cases unlike this one, where the plaintiff is an immediate third party to the contract, courts have declined to impose a duty unless "the 'end and aim' of the contractual transaction between a defendant and the contracting party is the achievement or delivery of a benefit to a known third party or the protection of that party's interests." (*Adelman v. Associated Intern. Ins. Co.* (2001) 90 Cal.App.4th 352, 363 (*Adelman*).) For example, in *Bily*, the court applied the *Biakanja* factors and concluded that an accountant owed no duty of care to nonclients who read and relied on an audit report. (*Bily, supra*, 3 Cal.4th at p. 376.) "In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence," the court declined to "treat the mere presence of a foreseeable risk of injury to third persons as sufficient, standing alone, to impose liability for negligent conduct." (*Id.* at p. 399.)

In *Adelman, supra,* 90 Cal.App.4th at p. 356, the court found no special relationship to support a negligence claim brought by condominium owners against an insurance company. The property insurance policy at issue was purchased by the homeowners' association for the common areas of the property, thus the court found that the "policy was intended to protect the collective or group interests of the plaintiffs, *not* their individual interests." (*Id.* at p. 366.)

In *Giacometti v. Aulla, LLC, supra,* 187 Cal.App.4th at p. 1141, the court declined to find professional negligence alleged by restaurant employees against an accountant hired by the employer to prepare tax forms. The court found that "the restaurant's intention in hiring the accountants was not to benefit the employees but to fulfill a legal obligation to furnish pay information to the IRS." (*Id.* at p. 1139; see also *Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1455 [finding no special relationship between plaintiff dairy farmers and the manufacturer of a defective milking system purchased from a distributor 15 years earlier, as "neither the pleadings nor the evidence suggests the [defendant's] milking system was 'intended to affect' the plaintiffs in any way particular to the plaintiffs, as opposed to all potential purchasers of the equipment"].)

By contrast, courts have found a duty owed to a third party where the contract was specifically intended to affect the third party. In *J'Aire* the appellant operated an airport restaurant under a lease from the County of Sonoma. (*J'Aire, supra*, 24 Cal.3d at p. 802.) The county contracted with the respondent to renovate the heating and ventilation systems at the restaurant, but the respondent failed to timely complete the work. (*Ibid*.) Applying *Biakanja*, the *J'Aire* court found that the respondent owed a duty to the appellant, who operated a business in the airport. As the court explained, "[t]he contract entered into between respondent and the county was for the renovation of the premises in which appellant maintained its business. The contract could not have been performed without impinging on that business. Thus respondent's performance was intended to, and did, directly affect appellant. (*Id*. at p. 804; see also *Biakanja, supra*, at pp. 650-651 [beneficiary of will could recover for negligent preparation of the will because "the 'end and aim' of the transaction was to provide for the passing of [the] estate to plaintiff"].)

Here, appellants might argue that the agreement between the landlord and Freshly Minted to perform repairs at the house where appellants lived was intended to, and did, directly affect them. But MHI was not a party to that agreement. By contrast, the franchise agreement between MHI and Freshly Minted had nothing to do with appellants, who were not even customers of the franchisee.

Appellants also contend that they alleged a duty by MHI apart from any contract, citing Civil Code section 1714. That statute provides liability for ordinary negligence based on "an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." But the 5ACC expressly alleges a claim for professional negligence, including that MHI failed its duty to "use such skill, prudence, and diligence as other members of the profession." Moreover, appellants cite to no authority supporting a claim for ordinary negligence under circumstances like these, where MHI's purported conduct was limited to its dealings with its franchisor and appellants have not alleged that MHI knew of or was directly involved in the work Freshly Minted performed for Ardalan.

Finally, appellants argue that the 5ACC sufficiently alleges a cause of action for negligence based on the doctrine of negligence per se. Appellants failed to raise this argument before the trial court. However, as appellants note, a plaintiff is "permitted to raise arguments for the first time on appeal where the facts are not disputed and the issue merely raises a new question of law. [Citation.]" (*Koch v. Rodlin Enterprises* (1990) 223 Cal.App.3d 1591, 1595.) Even on the merits, the negligence per se claim fails. Appellants contend that because MHI violated various statutes by allowing its franchisees to operate without valid contractors' licenses, MHI presumptively breached its duty of care. Evidence Code section 669, subdivision (a) establishes a presumption that a defendant failed to exercise due care where the defendant "violated a statute, ordinance, or regulation of a public entity," among other elements. But in order for the presumption to arise, appellants must first adequately allege a duty of care. (See *Rosales v. City of Los Angeles* (2000) 82 Cal.App.4th 419, 430 ["The presumption of negligence created by Evidence Code section 669 concerns the standard of care, rather than the duty of care."].) Because they have not done so, appellants are not entitled to the presumption of negligence per se.

## III.   Vicarious Liability

Appellants argue that MHI is vicariously liable for Freshly Minted's negligent conduct based on an agency relationship between franchisor and franchisee. We disagree. The 5ACC fails to support the claim that Freshly Minted was MHI's agent.

"[A] principal who personally engages in no misconduct may be vicariously liable for the tortious act committed by an agent within the course and scope of the agency. [Citations.]" (*Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th 680, 691.). "For an agency relationship to exist, the asserted principal must have a sufficient right to control the relevant aspect of the purported agent's day-to-day operations." (*Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 85 (*Barenborg*), citing *Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 478 (*Patterson*).) While the existence of an agency relationship is typically a question of fact, "[w]hen the essential facts are not in conflict and the evidence is susceptible to a single

11

inference, the agency determination is a matter of law for the court. [Citation.]" (*Emery v. Visa Internat. Service Assn.* (2002) 95 Cal.App.4th 952, 960; see also *Barenborg, supra*, 33 Cal.App.5th at p. 85.)

In *Patterson, supra*, 60 Cal.4th at p. 477, a franchisee's employee who was sexually harassed by another employee argued that the franchisor should be vicariously liable as the principal. The Supreme Court noted that the traditional test of agency did not necessarily account for the realities of the modern franchisor-franchisee business model, under which the franchisor typically provided a business plan requiring "the franchisee to follow a system of standards and procedures," including a "long list of marketing, production, operational, and administrative areas." (*Id*. at p. 490.) The goal of this franchise business model "—which benefits both parties to the contract—is to build and keep customer trust by ensuring consistency and uniformity in the quality of goods and services, the dress of franchise employees, and the design of the stores themselves. [Citation.]" (*Ibid.*)

In assessing the scope of an agency relationship in this context, the *Patterson* court examined two cases at opposite ends of the agency spectrum, *Nichols v. Arthur Murray, Inc.* (1967) 248 Cal.App.2d 610 (*Nichols*) and *Cislaw v. Southland Corp*. (1992) 4 Cal.App.4th 1284 (*Cislaw*). In *Nichols*, the appellate court affirmed the finding of agency where a franchisor "retained complete control over most areas of the business, and deprived the franchisee of any independence in managing the 'day to day details of [its] operation.'" (*Patterson, supra*, 60 Cal.4th at p. 493, quoting *Nichols, supra*, 248 Cal.App.2d at p. 614.)

Conversely, in *Cislaw, supra*, 4 Cal.App.4th at p. 1287, parents sued a convenience store franchisor after their son died from smoking clove cigarettes sold by a franchisee store. The franchise agreement obligated the franchisee to "undergo training; keep the store clean; maintain the equipment; carry an inventory of a "'type, quality, quantity and variety'" that reflected the 7–Eleven image; operate the store at certain times; make daily deposits into a designated account; provide purchase and sales records; and make the books available for inspection." (*Patterson, supra*, 60 Cal.4th at p. 495, discussing *Cislaw, supra*, 4 Cal.App.4th at p. 1294.) However, the

12

appellate court concluded that the franchisor did not possess the "all-important right to control the means and manner" in which the store operated on a day-to-day basis. (*Cislaw, supra*, 4 Cal.App.4th 1295.) Notably, the franchisee was responsible for inventory, employment, and operational decisions, the franchise agreement described the franchisee as an independent contractor, and the franchisor could not terminate the contract at will. (*Id*. at pp. 1293-1296.) The *Cislaw* court found that no agency relationship existed, recognizing "that the franchisor's interest in the reputation of its entire system allows it to exercise certain controls over the enterprise without running the risk of transforming its independent contractor franchisee into an agent." (*Id*. at pp. 1292, 1296.)

In light of these considerations, the *Patterson* court rejected "the proposition that a comprehensive operating system alone constitutes the 'control' needed to support vicarious liability claims like those raised here. As noted, a franchise contract consists of standards, procedures, and requirements that regulate each store for the benefit of both parties." (*Patterson, supra*, 60 Cal.4th at p. 497.) As such, the court concluded that a franchisor "becomes potentially liable for actions of the franchisee's employees, only if it has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees. Any other guiding principle would disrupt the franchise relationship." (*Id*. at pp. 497-498, footnote omitted.)

The franchise contract in *Patterson* allocated to the franchisee the "day-to-day decisions involving the hiring, supervision, and disciplining of his employees." (*Patterson, supra*, 60 Cal.4th at p. 478.) On the other hand, the franchisor prescribed and "vigorously enforced" standards and procedures involving making and delivering the food, general store operations, and brand image. (*Ibid*.) The court concluded that the franchisor had not "retained or assumed the right of general control over the relevant day-to-day operations" of the franchisee, and thus no agency relationship existed. (*Id*. at p. 503.)

Similarly, here, the franchise agreement expressly states that MHI does not have the power to hire and fire Freshly Minted employees and does not have day-to-day control over the business's funds or expenditures. The agreement provides that Freshly Minted is an independent contractor and bars MHI from terminating the contract at will. Appellants point to provisions of the franchise agreement giving MHI control of marketing, customer lists, the right to inspect Freshly Minted's books and offices, and establishing "System Standards." As in *Patterson*, these provisions only reflect MHI's right to control standards and procedures related to the entire franchise. Conversely, the franchise agreement and the allegations of the 5ACC demonstrate that MHI has not assumed substantial control of the day-to-day operations of Freshly Minted, particularly as relevant to employee hiring, firing, training, and supervision. Thus, appellants have not alleged "any connection between the cause of [their] injuries and any aspect of the business over which [MHI] did exert or could have exerted any control." (*Weiss v. Chevron, U.S.A., Inc.* (1988) 204 Cal.App.3d 1094, 1100.)

Appellants argue that the identification of Freshly Minted as an independent contractor in the franchise agreement is not dispositive where the parties' "actual conduct establishes a different relationship." While the "parties' characterization of their relationship in the franchise contract is not dispositive" (*Patterson, supra*, 60 Cal.4th at p. 501), here, the parties' conduct as alleged in the 5ACC and outlined throughout the franchise agreement was consistent with the independent contractor designation.[3]

---

[3] "Where written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and may be considered on demurrer." (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 800.) "[T]o the extent the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits." (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505; see also *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.)

Appellants do not address *Patterson*. Instead, they rely on several cases that we find factually distinguishable. (See *Kuchta v. Allied Builders Corp.* (1971) 21 Cal.App.3d 541, 547 [substantial evidence to support jury finding of agency where the franchisor "exercised strong control" over the franchisee, including the right of inspection over the franchisee's plans and specifications, in progress and completed jobs, as well as the right to train salesmen]; *Nichols, supra,* 248 Cal.App.2d at pp. 614-615 [franchisor was principal where it retained "rigid effective controls over almost every aspect of the operation," including "the right to control the employment of all employees" and other "day to day details"].)

We also find that the 5ACC did not adequately allege facts to establish vicarious liability under a theory of ostensible agency. Civil Code section 2300 provides: "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (See also Civ. Code, § 2317.)

"'It is elementary that there are three requirements necessary before recovery may be had against a principal for the act of an ostensible agent. The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; such belief must be generated by some act or neglect of the principal sought to be charged; and the third person in relying on the agent's apparent authority must not be guilty of negligence. [Citation.]'" (*Kaplan v. Coldwell Banker Residential Affiliates, Inc.* (1997) 59 Cal.App.4th 741, 747, quoting *Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399.) "Liability of the principal for the acts of an ostensible agent rests on the doctrine of 'estoppel,' the essential elements of which are representations made by the principal, justifiable reliance by a third party, and a change of position from such reliance resulting in injury. [Citation.]" (*Kaplan, supra*, 59 Cal.App.4th at p. 747.)

The allegations of the 5ACC fail to establish appellants' reliance on any representations by MHI. Appellants did not hire Freshly Minted to perform the work at issue and thus their purported belief that Freshly Minted was acting as an agent did not lead to the ultimate injuries. The 5ACC does not

15

allege any facts that could establish detrimental reliance on an ostensible agency relationship based on representations by MHI.

## IV.    Alternate Theories

For the first time on appeal, appellants assert theories of aiding and abetting and negligent hiring, supervision, and retention.  We note that appellants had multiple opportunities to amend their cross-complaint to allege a viable claim against MHI.  They failed to allege either of these theories or to argue to the trial court that they could amend to do so.  However, the court is not limited to the plaintiff's theory of recovery on a motion for judgment on the pleadings and instead must "determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory."  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38.)  We consider appellants' belated claims and conclude they have not alleged any viable claim against MHI.

We find no basis for liability based on a theory of aiding and abetting. Appellants cursorily suggest in their appellate brief, without citations to any allegations in the 5ACC, that "MHI knew that [Freshly Minted]'s conduct breached a duty...and gave them substantial assistance to continue acting." Aiding and abetting liability may "'be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 579, quoting *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325-1326.)

The 5ACC does not allege that MHI engaged in any such conduct. There are no facts suggesting MHI knew that Freshly Minted was remediating mold and conducting other repairs at the house where appellants lived, let alone that MHI knew Freshly Minted was committing an intentional tort and gave the company "substantial assistance" in accomplishing the tortious result.  Since appellants have not alleged an intentional tort against Freshly Minted, leave to amend the complaint yet

16

again to allege aiding and abetting the commission of an intentional tort against MHI would be futile.

Similarly, the 5ACC does not allege a claim against MHI under a theory of negligent hiring, supervision, and retention. Such a claim requires MHI to act as the employer of Freshly Minted. (See, e.g., *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139.) As we have discussed, the 5ACC demonstrates that Freshly Minted was an independent contractor and was neither the agent nor the employee of MHI. This claim therefore fails.

Lastly, we find no abuse of discretion in the trial court's denial of further leave to amend. Indeed, appellants have not attempted to show how they could amend the 5ACC to cure the defects identified by the trial court. (See *Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 999 ["'To meet [the] burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action.'"].) As such, appellants have not met their burden to show error in the trial court's granting of MHI's motion for judgment on the pleadings without leave to amend.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


VAN ROOYEN, J.*


We concur:


ZUKIN, P. J.                                    MORI, J.

---

*     Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.